### BUICK MOTOR CO. v. CITY OF MILWAUKEE et al.

District Court, E. D. Wisconsin.
March 14, 1930.

Jeffris, Mouat, Oestreich, Avery & Wood, of Janesville, Wis., for plaintiff.

John Niven, of Milwaukee, Wis., for defendants.

GEIGER, District Judge.

This suit has been brought to restrain the defendant city and its treasurer from enforcing a tax levy upon plaintiff's income as hereinafter stated. The complaint alleges:

"1. The complainant, Buick Motor Company, is, and was at all times hereinafter mentioned, a corporation organized and existing under and by virtue of the laws of the State of Michigan, and is a citizen of said State, having its principal office in the city of Flint, in said State. Said complainant, Buick Motor Company, has duly obtained leave to do business in the State of Wiscon-

sin as a foreign corporation, and is doing business in said State. The defendant, City of Milwaukee, is a municipal corporation of the State of Wisconsin. The defendant, John I. Drew, is a citizen and resident of the State of Wisconsin, and is the Treasurer of the City of Milwaukee. * * *

"2. The complainant was organized under the corporation laws of the State of Michigan on or about January 3, 1917, and was duly licensed to do business in the State of Wisconsin on or about March 18, 1917, and is engaged extensively in interstate commerce, and in connection with and as part of said interstate commerce it was engaged in transacting business in the State of Wisconsin commencing on or about March 18, 1917 and during the years ending December 31, 1917, and December 31, 1918, and December 31, 1919, and December 31, 1920, and December 31, 1921, and December 31, 1922, and December 31, 1923, and December 31, 1924."

"4. The complainant has paid all of the taxes and fees assessed against it by the State of Wisconsin, or any department thereof; save only the $226,734.00 tax mentioned in paragraph twenty-one herein, which is the subject of this bill.

"5. General Motors Corporation is a foreign corporation, organized on or about October 13, 1916, under the laws of the State of Delaware, and duly authorized to transact business within the State of Wisconsin. That said corporation is engaged in the manufacture of motor vehicles and has manufacturing plants in the State of Michigan. That it is extensively engaged in interstate and foreign commerce and in the course of its business sells motor vehicles to dealers in the State of Wisconsin which are shipped from Flint, Michigan, and from other points outside of the State of Michigan. That said General Motors Corporation is the sole owner of the stock of complainant, Buick Motor Company, except directors' qualifying shares. That said complainant, Buick Motor Company, Wisconsin branch, is engaged in the retail distribution of Buick motor vehicles in the State of Wisconsin. Heretofore, and on or about the 2nd day of January, 1917, the complainant entered into an agreement with General Motors Corporation, whereby the complainant engaged to do the selling to dealers of Buick automobiles for the General Motors Corporation for a stipulated consideration and compensation therefor of Twenty-five hundred dollars ($2,500.00) a year. Said contract is attached hereto, made a part hereof, and marked 'Exhibit A.'

"6. That complainant has not received

during the years herein mentioned, nor is it entitled to receive any income on business transacted within the State of Wisconsin, except Twenty-five hundred dollars ($2,500.00) a year."

The contract referred to in the above paragraph 5 is as follows:

"Exhibit 'A'

"Agreement made this Second day of January, 1917, between General Motors Company, a New Jersey corporation, hereinafter termed the Seller, and Buick Motor Company, a Michigan corporation, hereinafter termed the Buyer.

"Witnesseth: The Seller hereby agrees to sell to the Buyer, and the Buyer hereby agrees to buy from the Seller, the entire output of automobiles and their parts of the "Buick" factory, Flint, Michigan, upon a basis which will result in an annual net profit of Twenty-five Hundred Dollars ($2,500) to the Buyer on said business; it being intended that the Buyer shall make an annual net profit, after deducting all expenses, equivalent to twenty-five per cent (25%) on its present outstanding capital stock of $10,000.

"In Witness Whereof the parties hereto have caused this Agreement to be signed by their proper officers and their corporate seals to be hereunto affixed as of the day and year first above written.

"General Motors Company,
"By M. L. Prensky, Compt.
"Attest:
"T. S. Merrill, Secretary.
"Buick Motor Company,
"By H. H. Rice, Treasurer.
"Attest:
"T. S. Merrill, Secretary."

Plaintiff's brief adds to the allegations of the complaint that plaintiff "is a subsidiary of the General Motors Corporation, its Capital stock is owned by individuals who are the nominees of the latter concern. The business of complainant is the sale of Buick cars, parts and accessories, under a contract with General Motors Corporation; it does no manufacturing business; it has a sales office in Milwaukee which sells cars and accessories and parts. This corporation was organized as one of several similar subsidiary sales corporations of General Motors Corporation, among them (naming five), all doing business under contracts similar to" (Exhibit A, supra).

Upon this showing, the plaintiff at once brings itself within the range of liability imposed by the Wisconsin law for a tax on all income received by every person residing within the state and by "every non-resident of the state upon such income as is derived from property located or business transacted within the state," except as may be "hereinafter exempted." Indeed, as the record attests, plaintiff has at no time denied that such, was its status. But, beginning with its organization, its license to transact, and its actual transaction of business within Wisconsin, it and its associate or parent, General Motors Corporation, has and have had a variety of contention with the state tax authority concerning the basis and the scope, degree, or quantum, of liability. By "variety" of contention is meant the positions taken by one or the other parties, the tax authorities, the plaintiff directly, or through the General Motors Corporation, respecting the efficacy of the foregoing contract, to determine or admeasure, or to control, in some way or other, plaintiff's liability. The detail or chronology of this need not be given, as it is not deemed pertinent to the question now to be discussed. It suffices to say that at times the contract was, at others it was not, respected as the basis of plaintiff's income returns. The occasion for reviewing the debate and its pertinency in this case is furnished by the assessment and proposed enforcement of a levy against plaintiff pursuant to authority granted by the Wisconsin Legislature in 1925 for "back taxes" found to be due from 1916 to 1925. The taxes, having been assessed, an appeal to the state tax commission resulted in their confirmation, and this suit has been commenced to restrain their attempted collection.

Taking the complaint herein—for it may be so taken—to project the contract as a basic defense, the plaintiff says of it:

"The tax commission declined to recognize this contract in the determination of the income of complainant and the taxes thereon involved in this suit. For convenience of discussion, we defer stating the reasons assigned for disregarding that contract to that portion of this brief devoted to the position that this contract is valid and determines the taxable income of the plaintiff during the years involved. Such additional facts as may be imported in this connection we shall mention in the discussion of this branch of the case." (Plaintiff's brief.)

Then, and under the caption, "The contract of complainant with General Motors determines its income under the facts here involved and the commission had no right to disregard it," the brief proceeds:

"Were the contract involved made with General Motors by an individual instead of the Buick Motor Company, we assume to say that it would pass everywhere unchallenged as determinative of that individual's income. If it does not so pass in this case, the reason is that the stock in complainant corporation is owned by nominees of General Motors. The question is whether such fact furnishes a basis sufficient for the application of a rule different from what would undoubtedly be applied to the individual contractor.

"That complainant is a corporate entity capable of making a contract cannot be successfully disputed. It is equally clear that, separate and distinct from complainant corporation, General Motors is likewise a corporate entity capable of making a contract. The ownership of stock in another corporation by General Motors or its nominees is not forbidden by law and such ownership does not destroy the corporate entity of either corporation or their ability to make contracts with third persons or with each other. The fact alone that the stock of a subsidiary is owned by the parent corporation or its nominees does not justify the conclusion that one is merely the dummy of the other and that a contract between them is nothing but a sham or a meaningless scrap of paper. That the terms of the contract between the two corporations have been carried out from the beginning and the business between them transacted accordingly, is established by the evidence of complainant and is not disputed.

"The controversy between complainant and the tax commission arises out of the effort of the commission to assess to complainant not only the income it actually had but also a portion of the income of General Motors; that portion which the commission determines General Motors made on cars sold by complainant in Wisconsin during the years involved by reason of the fact that the contract in question does not give to complainant as much as, in the opinion of the commission, it would have made had it sold these cars under a wholly different arrangement. By this proceeding the commission has imposed on complainant a tax based not upon its income but upon that of another corporation which is a separate and distinct business entity, licensed to do business in Wisconsin, and subject to the jurisdiction of the tax commission. That the decision of the commission does not determine any income of complainant as a fact is obvious. The audit upon which it is based and the result derived is nothing but an imputation. Likewise this computation does not determine the income of General Motors. That is also manifest. This decision does not determine as a fact the income of anyone. We suggest that the only way in which a situation such as is here presented could be legitimately handled is by a proper proceeding against General Motors in which it can appear and assist in a determination just and regular as to everybody. Instead of thus proceeding, the tax commission seeks to impose upon complainant a tax based upon General Motors income of which the Buick Motor Company never got a dollar. If General Motors did not return all its income, the commission had ample power to compel it to do so and then impose the proper tax. The facts in this case certainly furnish no justification for even an effort to impose on one corporation a burden that properly belongs to another, even admitting that that justification can be said to exist under certain circumstances."

The discussion thus aroused does not proceed upon any suggested want or infirmity of broad legislative power to assess and enforce "back" taxes. I do not understand that any such challenge is made. True, as will be seen, plaintiff, conceding the broad power, does attempt to set up an estoppel, compromise, or accord against the exercise of the power in the particular assessments in hand.

But recognition of such broad authority necessarily carries with it like power and discretion respecting determination of income, in a legal sense, the application of appropriate tests or methods of ascertaining income arising on *business transacted* in the state. Putting it more concretely, if the business be that of buying and selling, it obviously calls for determination of costs or value, their reflection against *selling avails*, subject to selling expense, burdens of operations, and the like, all to the end of getting *net results* of *business transacted*; and certainly, if such determination may be made upon differing theories or upon varying formulæ, there must be some discretion in selection, provided such varying bases be severally tenable.

If this be so, it must follow that, when a taxing or an assessing functionary is thus empowered and proceeds upon evidence competently and pertinently to be considered, then its judgment or estimate is not ordinarily subject to reconsideration by a court of equity, to the end that the latter may reach and pronounce a revisory conclusion to supersede the former. That is to say, the judgment or assessment of the taxing authority is not open for a recasting of the evidence,

and a new estimate thereon with the idea that another judgment more favorable or more *equitable* to either taxpayer or to the government may be formed; and courts of equity have never been recognized as possessing that sort of reviewing and revisory power over assessments. Of course, as indicated, this is always upon the assumption that the duly constituted assessing functionary proceed within the scope of its powers and upon evidence pertinently bearing upon the matter in hand.

Now, we assume that the parties in this lawsuit are addressing themselves to contentions made by one or the other before the state taxing authorities. Thus it was contended there, as here (1) that the plaintiff is a distinct corporate entity; (2) licensed to transact and actually transacting a large business in Wisconsin as *its* (the plaintiff's) business; (3) that it qualified itself to transact that business—selling automobiles and accessories—by or through purchase from the General Motors Corporation under the contract in question; (4) that the transaction of such business yielded income or profit; (5) that, as between plaintiff and those with whom it transacted the business, or as between plaintiff and the public (or the state of Wisconsin), *it* exacted the avails of such business, and initially received and held the income, profit, or gains arising or calculable thereon. In other words, if there arose *on the business* a profit, an income, or a gain in the ordinary sense of the excess over cost and value of the thing sold, less expense, it initially came to or *accrued* the plaintiff as a matter of right; (6) that such excess, though coming to plaintiff, was subjected, in some way, so the plaintiff contended and now contends, to compulsory accounting to the motors corporation if the contract be valid and be given the purport (a) of purchase and sale, (b) of rendering to the motors company all of the profit and income or excess thus arising, except $2,500, the latter not limited to Wisconsin, but on all business transacted by plaintiff in any or all states or territories.

The state tax commission, in considering the subject-matter of the plaintiff's income and its relationship with the General Motors Company, rendered a detailed and exhaustive opinion discussing various hypotheses for interpretation of the contract in question; and, while the attitude of the plaintiff in this suit is reflected in the excerpt hereinbefore quoted, the latter does not reach the real question aroused upon the record with respect to the effectiveness either of the contract, or what the plaintiff and the motors company did

under it, to meet the proposition that such contract operates as a device to evade the income tax law of Wisconsin; that the contract, coupled with the plaintiff's admitted or claimed status, supports the state's position *that the plaintiff transacted as its own the business in fact transacted and which gave rise to income or gain received by it within the meaning of the state law.*

So, complainant's suggestion that, being a corporate entity "capable of making a contract" with another separate and distinct entity of like capability, General Motors Company, and that the latter's ownership of stock in the plaintiff "does not justify the conclusion that one is merely the dummy of another, and that a contract between them is nothing but a sham or a meaningless scrap of paper," regardless of its correctness, does not, as it is conceived, meet the real issue tendered. And when likewise the controversy between complainant and the state tax commission is said to arise "out of the effort of the commission to assess to complainant not only the income it actually had, but also a portion of the income of General Motors," it is believed that plaintiff does little more than beg the question at issue. Plainly, one of the questions before the commission was the meaning and the purpose of the contract, whether it operated and of necessity must operate as a contractual method directed to a subject within the power of the commission to determine, viz. whether by the contract, in view of the relationship of the parties, the income or profit arising upon a business which the plaintiff transacted could, or in a legal sense should, be regarded as the state contends, viz. the plaintiff's business upon which income *accrued* to it. Whether or not the relationship be characterized as "dummy" is quite aside from this basic question as to the right and power of the plaintiff and the motors company to make a contract which, if respected, must either deny or disparage the power of the tax commission to deal with a situation rather plainly within the law— that is, to deal with it other than as the plaintiff and the motors company may insist the contract dictates. If the contract be given face value, the parties to it are reduced to this:

(1) That the plaintiff becomes the purchaser and the motors company the seller of the latter's entire output of certain automobiles, etc.

(2) That it was within the contemplation of the parties that the plaintiff as purchaser should become the seller or distributor of

the cars so purchased; and, as indicated, that in transacting that business, *subject to the attempted limitations of the contract thereover,* plaintiff became the recipient of the avails (income) of such business.

Manifestly, the state taxing authority was not bound to proceed upon the hypothesis of fact that the income arising on business which the plaintiff transacted had been lawfully abdicated or contracted away in advance; nor that, as against the state, the contract must be effective, precluding the plaintiff from any relationship to the income except the obligation to turn it over as purchase price, in whole or in part, to the motors corporation, wherefore the plaintiff *received* no income on its business. Considering the matter in this light, it makes little difference whether the plaintiff and the motors company be separate corporate entities, subsidiary or parent, respectively, or whether plaintiff be characterized as a "dummy," or whether in any event each be granted legal capability of making a contract of purchase and sale, or even of limitation of profit *as between themselves.* But the effectiveness of the contract to deny the applicability of the tax law to a part *or to the whole* of the income that arises upon the business which the plaintiff transacts in the state is quite another matter. This particular contract provides for a 25 per cent. profit on a capital of $10,000. If it must be respected, then a contract eliminating all profit retainable by the plaintiff ought to be just as valid. Certainly, on its face, it negatives the purpose of creating an ordinary agency, and the volume of business transacted by the plaintiff does not indicate a good-faith purpose to allow $2,500 per year as reasonable compensation for the effort of a distinct and separate entity which assumed responsibility, as such, for the enormous business transacted. In my judgment, it cannot be true, as plaintiff asserts, "were the contract involved made with General Motors by an individual instead of plaintiff, *we may assume* that it would pass everywhere unchallenged as determinative of that individual's income." The assumptions that the contract made by an individual would be analogous and of unquestioned validity when tested out under a tax law would, so it is believed, depend upon the identical considerations urged against the plaintiff, viz. whether the individual professed or insisted that the business transacted was his *individually* or whether it was his *representatively*; what, if any, purpose could be discerned in his willingness to transact a country-wide volume for little or no consideration in either capacity; and what, above all, is to account for the rather anomalous and practically indeterminate manner of fixing a *purchase* consideration. The difficulty confronting plaintiff and the motors company does not arise because the words of the contract are not susceptible of the meaning, viz. that plaintiff was to *buy* the latter's output, sell it, account for the proceeds less expense and $2,500 annual income; it does arise on the inquiry how that susceptibility can eliminate the notion that the whole plan was and is a *device,* effective *solely* to acquit the plaintiff of responsibility to the state for income arising on its business. And that notion cannot be ignored on plaintiff's suggestion "that the only way in which a situation such as is here presented could be *legitimately handled,* is by a proper proceeding against the *General Motors in which it can appear and assist in a determination* just and regular as to everybody." That may evade or avoid the situation, but it does not answer the question whether by the contract, plaintiff and its co-contractor can compel the state to respect the contract as one of immunity for plaintiff, wherefore the motors company must be pursued. And the record before the tax commission, in this case, is not only consistent with, but largely predicated upon, the idea that the income arising on the business transacted *came* to the *motors* company, not on business which *it* transacted in the state, but solely upon devolution *by the plaintiff* to the motors company *under* or *by virtue of* the contract. Indeed, as the tax commission in effect noted, that thought is implicit in the contract.

It is my judgment that when the business transacted is found to be plaintiff's, conceding the "subsidiary" relation to General Motors, the tax authorities of the state were not obliged to respect the contract as an instrumentality relieving plaintiff, in whole or in part, from the effectiveness of the tax law against the income arising in or on such business. In other words, the contract cannot be interposed as a means of cutting off the income from the business, or from the plaintiff, and devolving it upon the motors company as the one solely responsible to the call of the law.

The views thus entertained were, in substance, informally expressed in another case, Burroughs Adding Machine Co. v. Milwaukee, at the time the present case was heard;[1] and they are believed to be here applicable and determinative of the practically identical,

---

[1] No opinion filed.

basic question. The plaintiff, however, has urged for consideration what is claimed to be a decision of the commission upon a hearing held in 1921, when, so plaintiff says, the commission "refused to recognize the $2500 contract as determining the income of complainant for income tax purposes."

This is set up as an effective executive adjudication pleadable as an estoppel, a binding compromise, or accord and satisfaction, whichever it be termed, barring the present assessment.

If it be assumed, as it must be, that the powers exercised by the commission were directed toward correction and revision, upon investigation and discovery of facts, and the application of appropriate legal principles thereto, then, in order to defeat the present assessment because violative of the principle recognized in State ex rel. Schuster v. Lyons, 184 Wis. 175, 197 N. W. 585, 199 N. W. 48, or Woodworth v. Kales (C. C. A.) 26 F.(2d) 178, it must clearly appear, when projected against the former action of the commission, it (the present assessment) has at its foundation both identity of fact and identity of applicable legal principles. It may be admitted that the commission, the plaintiff, and the motors company at all times were addressing themselves to the question, "What is the plaintiff's taxable income?" And if, upon the view hereinbefore expressed, that question cannot be answered by mere reference to the contract, viz. $2,500, then there is little in the record to suggest that prior to 1921 the commission, or the tax authority of Wisconsin, had been fully apprised of the facts upon which some other answer could be made, or that, being apprised of them, it made a binding answer. It may be true that certain items, such as gross sales in Wisconsin, to be credited, or to be charged, to or against either the plaintiff or the motors company, had been disclosed to the tax commission. But with some confidence it is believed that at no time until the basis for the present assessment was ascertained did the plaintiff or the motors company return to the tax commission what at that time was acceptable or was accepted unequivocally as the hypothesis upon which to find "income" on the transacted business.

True, as has been observed, and as the record attests, on one or more occasions the contract was recognized as reflecting plaintiff's income; on another occasion or occasions it was not. There was consideration of "consolidated returns," of casting income upon the basis of "jobbers percentage," or the like. But at no time was there placed before the tax commission as a basis for computation of plaintiff's tax a detail of debits and credits in respect of the transacted business such as the tax commission finally carried into the present assessment, and with respect to which it observed, upon disposing of plaintiff's appeal:

"The assessment contested on this appeal does the appellant no injustice. Its Wisconsin gross income is computed on the basis of selling price less the cost, as if the Milwaukee Branch were in fact an independent distributor. This appeal presents no question of theoretical computation of income. In order to arrive at the gross income of the Milwaukee branch, the Tax Commission used actual sales to dealers by this branch, and actual prices which independent distributors were being charged for cars; and all expenses which an independent dealer would have to pay, have been allowed if the expenditure was incurred either by the appellant or by its parent in appellant's behalf. No fairer assessment could be made. The appellant admits the correctness of the basis upon which this assessment is made, if the Commission may treat the Milwaukee branch as an independent distributor. The answer to the latter qualification of the appellant is, that the Commission has only carried out the plan of assessment which it had in mind when it wrote its letter of August 23, 1921, and it only seeks to tax income actually derived in Wisconsin."

Now if the commission for the first time in all the years of contention over plaintiff's tax liability has applied proper formulæ for ascertaining income arising on Wisconsin business, it cannot be that an earlier failure to do the same thing, a failure attributable at least as much to the plaintiff and its associate, General Motors, as to the state, can raise an estoppel, or that it should even be the basis of complaint, if it be conceded, as I think it should be, that a large portion of income did in fact escape taxation. No matter with what formality the state taxing authorities may have agreed to a basis such as the contract allowance, such agreement ought not to be accepted as a binding abdication of duty—therefore an estoppel—when the exact facts and the true principle respecting the tax are sought to be availed of.

Even if it be taken for granted that prior to the present assessment the commission knew the facts respecting the income during the years now covered, the plaintiff, if the present assessment reflects a just result upon

application of correct principles, cannot gainsay that upon former assessments plain error was committed. Hence the latter ought not to be recognized as an equity and basis for estoppel; unless it clearly appears that upon being compelled to submit to a correction of the error, the plaintiff is subjected to injustice.

The matter may be restated thus: There is certainly a wide difference between the action of a tax functionary in seeking, at a later period, to place a higher valuation upon a physical structure, like a building, because at the earlier period it did not know that concrete used in its construction was "reinforced," or that hard, instead of soft, wood was used, wherefore it might be found to be more valuable (State ex rel. Schuster v. Lyons, supra), and a situation like the present, where the inquiry concerned the status of a taxpayer, his or its relationship to business transacted within the state, the net avails thereof, and the like. And, in the latter, discovery of a mistake either of fact or of law (not involving mere revision of judgment once exercised on identical bases), should prompt correction. A taxpayer who, after all, has merely profited by the error, should not complain of just correction.

The conclusion is that the bill should be dismissed. Upon the hearing, counsel for the parties intimated that in the assessment in question there was an error through failure to credit the plaintiff with the personal property "offset" allowable under the Wisconsin law, and that such error be corrected by consent. If this be true, a stipulation to that end may be filed.

Judgment may be entered accordingly.