# BUICK MOTOR CO. v. CITY OF MILWAUKEE, WIS., et al.

## No. 4418.

Circuit Court of Appeals, Seventh Circuit.

April 6, 1931.

O. A. Oestreich, M. O. Mouat, and P. J. E. Wood, all of Janesville, Wis., and John Thomas Smith, of New York City, for appellant.

Walter J. Mattison and John M. Niven, both of Milwaukee, Wis., for appellees.

Theo. W. Brazeau, of Wisconsin Rapids, Wis., for Wisconsin Tax Commission.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal involves the validity of a reassessment by the Wisconsin tax commission for state income taxes for the years 1917 to 1924, inclusive, of appellant, Buick Motor Company, a Michigan corporation licensed to do business in Wisconsin.

The company has a capital stock of $10,000, all owned by General Motors Company, a Delaware corporation, and carried in the names of its nominees.

Under date of January 2, 1917, "General Motors Company * * * termed the Seller" contracted in writing with "Buick Motor Company * * * termed the Buyer" whereby "the Seller agrees to sell to the Buyer and the Buyer hereby agrees to buy from the Seller the entire output of automobiles and their parts of the (seller's) 'Buick' factory at Flint, Michigan, upon a basis which will result in an annual net profit of Twenty-five Hundred Dollars to the Buyer on said business." The contract has unlimited duration.

To appellant's Wisconsin branch, with headquarters at Milwaukee, there was assigned as its territory the northern peninsula of Michigan and all the state of Wisconsin, except the southern tier of counties, which counties were part of the territory assigned to and served from the Chicago branch.

During the years in question appellant's annual sales of cars and parts ranged from a minimum of $89,000,000 to a maximum of $231,000,000, whereof the annual sales of the Wisconsin branch were from $2,454,000 to $6,800,000. The cars and parts sold by the Wisconsin branch were billed to the branch by appellant at about the same price as to independent distributors, and were shipped from General Motors' factory at Flint, Mich., and remittances were made by the customers to the Wisconsin branch, which, having no bank account of its own, sent the remittances as received to General Motors.

For the year 1917 appellant returned for Wisconsin tax an income of $5,018.42, but later contended that its income was only $2,500, which was the income which it annually returned for some years thereafter. For 1919 the tax commission, over appellant's protest, added as further income $80,051, which represented, in the main, Wisconsin's proportion of an aggregate amount of $1,419,290.16 withheld by appellant as reserve for dealers' rebates.

In 1920 the tax commission signified its dissatisfaction with appellant's general plan of return of income, and there ensued considerable correspondence and discussion between them, resulting, in 1921, in the inauguration of the general practice of treating appellant's Wisconsin branch, for income purposes, as though the branch were an independent jobber or distributor of the Buick products. Amended returns were accordingly filed for

1919 and 1920 (but none for prior years) whereunder there was refunded to appellant $2,993.78 of the income tax it had paid for 1919. For the subsequent years in issue appellant assumed to return its income upon this basis, and paid its income taxes thereon. The data for the annual returns were supplied by appellant.

But in 1926 the commission caused its own audit to be made of appellant's accounts to ascertain whether the returns which had theretofore been made truly reflected its income. After an apparently exhaustive investigation of appellant's accounts, as well as those of General Motors, the commission concluded that these returns did not truly reflect the income and ordered a reassessment, whereby there was added to the income as returned sufficient to increase the tax which had been paid for the years in question, plus interest, by an aggregate for the period of $226,734. This reassessment of income, and the tax thereon, was sustained by the District Court, whose decree is the subject of this appeal.

As to the accuracy of the commission's audit there is no controversy. In the concluding paragraph of appellant's reply brief it is said: "The fact of the matter is that the audit of the commission is substantially correct, its premise or base of approach admitted; * * * "

■ It is insisted for appellant that the transactions of 1920 and 1921 between appellant and the commission estop the commission from questioning returns made in pursuance of the understanding apparently then reached. Apart from any question of the right of the commission to bind the state by any understanding or contract, it does not appear that what was then done rose to the dignity of a contract, nor that there was a hearing and decision by the commission adjudicating the rights of the parties. In any event, it seems plain that at that time all of the salient facts bearing upon appellant's income were not before the commission. Indeed, it is contended for appellee that in making the reassessment the commission did not depart from the general basis of understanding which was reached in 1921. To be sure, if the returns made by appellant had embodied the figures as found by the commission's audit, the discrepancies between them would not appear. To the extent therefore that appellant's returns were erroneous—whether intentionally or mistakenly—the commission could not be estopped by any understanding reached in 1921, as that understanding did not and could not properly bind the commission to specific items or figures of income.

In Judge Geiger's further discussion of this proposition in his opinion in the District Court, to which we make reference, he has abundantly demonstrated that this contention of appellant is not well grounded. 43 F.(2d) 385.

■ But it is insisted that the intercorporate contract relation should be given effect, and that the stipulated $2,500 of net profit to appellant should be held to be the maximum of appellant's actual taxable income for each of the years in question. Whether the contract, as between the contracting parties, is upon its face fraudulent, does not concern the state in the matter of its taxes upon income derived from business transacted within its limits. Whatever other purpose such a contract might have, the conclusion seems quite irresistible that one of its objects was to transfer the income arising from the business of such states as then had, or might thereafter enact, an income tax law, so that the income would not be taxable in the state where earned. This motive might not alone warrant the state in ignoring the contract, but if appellant, notwithstanding the contract, continued to earn the income upon business transacted within the state, the contract would not serve to defeat the right of the state to tax the income so earned.

■ The function of selling the product was a highly essential department of General Motors' business, scarcely less so than the manufacturing end of the operations, and was entitled to be credited with a substantial share of the profits of the general business. By turning over to General Motors the remittances for sales made by appellant's Wisconsin branch, the profits which appellant earned on its Wisconsin business were diverted to appellant's one stock owner—General Motors. While appellant carried on this vast business under an arrangement with General Motors whereby the profits realized at once passed to General Motors, the profits constituted taxable income in Wisconsin ere they passed to the single beneficial owner of the capital stock. Distribution of corporate profits to or among stockholders, by whatever form, does not relieve the corporation from income tax on what is so earned and distributed. Cliffs Chemical Co. v. Wis. Tax Comm., 193 Wis. 295, 214 N. W. 447, 449; Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; Houston, etc., Co. v. United States (C. C. A.) 250 F. 1; Rensselaer &

S. R. Co. v. Irwin (C. C. A.) 249 F. 726; West End St. Ry. Co. v. Malley (C. C. A.) 246 F. 625; Judson Freight Forwarding v. Commonwealth, 242 Mass. 47, 136 N. E. 375, 27 A. L. R. 1131.

█ It is maintained for appellant that General Motors was also licensed to do business in Wisconsin, and that if this income from the selling of Buick products were taxable in Wisconsin it should be assessable to General Motors as its income. But appellant is a distinct corporation, which had contracted with General Motors to buy and sell Buick automobiles and parts, and it was this separate entity which transacted this business in Wisconsin, and to this entity the state had a right to look for its tax upon the profit arising in Wisconsin from the transaction of this business there. Judge Geiger's opinion has, in our judgment, well demonstrated that the intercorporate contract does not limit the state to a tax upon the income which the contract assumes to prescribe.

█ But if the binding effect of the transactions of 1921 were assumed, as contended for appellant, appellant would be likewise thereby bound, and, failing then and thereafter to have fully made the disclosures of income which those negotiations assumed would be made, it may not complain if thereafter the true state of the income is made to appear and its taxes reassessed accordingly. For the taxable years 1917 and 1918 it does not appear that any reassessment was made at all pursuant to the 1921 understanding, nor that the alleged agreement of 1921 was ever acted on as to those years.

The right to make such reassessment is recognized in section 71.25 (1), Wisconsin Statutes enacted in 1925.[1]

In a quite comparable situation, where it was contended that the act should not be applied retroactively, and, if so applicable, would be unconstitutional, the Supreme Court of Wisconsin said that in passing the act the

Legislature "merely directed the Tax Commission to conform to a method which would have been their duty to adopt without the act. But even if applied retroactively, the statute would not be unconstitutional on that ground." Cliffs Chemical Co. v. Wis. Tax Comm., supra.

█ We find no merit in the suggestion that the sales made to dealers in the northern peninsula of Michigan were not Wisconsin business, and that the profit thereon was not includable in the Wisconsin returns. The sales were made through and by, and the remittances therefor made to, the Wisconsin branch at Milwaukee, and were in essence Wisconsin business. If the fact that the shipments to the northern peninsula were made directly from Flint constituted them Michigan and not Wisconsin business, then, by the same token, the sales made in that very considerable territory comprising the southern tier of Wisconsin counties, although made by the Chicago branch, would be Wisconsin business and the profits taxable in Wisconsin. But appellant did not include in its Wisconsin returns the income on that business, and it would thus scarcely be in position to maintain that the northern peninsula business transacted through the Wisconsin branch was not Wisconsin business.

█ It is contended that section 71.25 is unconstitutional because it grants to the commission judicial powers, if authorizing it to determine whether the intercorporate contract was in fraud of the Wisconsin income tax law. On this we need say no more than that the statute was distinctly held constitutional by the Wisconsin Supreme Court in Cliffs Chemical Co. v. Wis. Tax Comm., supra.

█ It is further contended that the reassessment in question deprives appellant of property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States. To the extent that this contention is predicated on the assumption that appellant is taxed upon income which it did not receive, that proposition of fact has been heretofore sufficiently considered, and disposed of contrary to appellant's contention.

The Cliffs Chemical Co. case, where the tax was upheld on property which, as produced, was distributed to the corporate stockholders, and where the same federal constitutional proposition would be involved as here, was heard on error in the United States Supreme Court, which dismissed it "for want of" a substantial federal question." Cliffs

---

[1] "(1) When any corporation liable to taxation under this act conducts its business in such a manner as either directly or indirectly to benefit the members or stockholders thereof or any person interested in such business, by selling its products or the goods or commodities in which it deals at less than the fair price which might be obtained therefor, or where a corporation, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, acquires and disposes of the products of the corporation so owning a substantial portion of its stock in such a manner as to create a loss or improper net income, the commission may determine the amount of taxable income of such corporation for the calendar or fiscal year, having due regard to the reasonable profits which but for such arrangement or understanding might or could have been obtained from dealing in such products, goods or commodities."

Chemical Co. v. Wis. Tax Comm., 277 U. S. 574, 48 S. Ct. 435, 72 L. Ed. 994.

Appellant insists that, in any event, it is entitled to such a deduction from the ascertained income as would be the equivalent of such a federal income tax as would have been required to be paid by an independent jobber or dealer who had earned on Wisconsin business the same income which was found to have been earned by appellant for the years in question. Appellant contends that an independent dealer who had earned this income would have been required to pay a federal tax very much larger than the federal taxes which in fact the commission did deduct from income.

The commission dealt with the federal income tax feature by apportioning to the Wisconsin income a proportionate share of the entire federal income tax which was paid for the respective years by General Motors, whose returns to the federal government included the profits of all its subsidiaries, including appellant. The apportionment made by the commission is not attacked, but the method is questioned. For instance, for the year 1921 the deductible losses of General Motors Company were sufficiently heavy to neutralize its entire profits and it paid no federal income tax for that year; and so for that year the commission made no deduction on account of federal income taxes. To the extent that in other years the income of General Motors was reduced by deductible losses, the proportion of federal income taxes paid attributable to Wisconsin income would be proportionately less, whereas it is contended the profits of an independent dealer transacting the Wisconsin business would not likely have been subject to such reduction.

Of course we cannot know what deductions from income an independent dealer would have been entitled to make. There are many contingencies which could not have been anticipated. Once it is determined what income was taxable to appellant, the tax will not be defeated by embarrassments in the way of determining what deductions from income the taxpayer might have been entitled to have had allowed.

If the practice was, as it seems to have been, to determine the federal income tax upon a consolidated return by General Motors and all its subsidiaries, we cannot see that the state was derelict in its duty or unfair toward appellant in deducting from Wisconsin income, for purposes of the state income tax, such a proportion of federal income taxes paid by the parent company as would be at-

tributable to Wisconsin income. If none were paid, then none would be deductible. The gross amount so deducted by the commission for federal taxes paid by General Motors, and attributable to Wisconsin income, during the period in question, was $422,237.82, and we find no substantial ground for complaint in the contention that the deduction should have been made.

Under the circumstances appellant is not in position to complain of the method adopted, particularly as the record makes no disclosure of a definite plan which is more fair.

Generally speaking, strict mathematical certainty cannot reasonably be expected in such matters. In the routine of taxation as applied to ordinary business, slight departures either in method or computation involving trivial amounts will not be noticed. Having in mind the magnitude of the business here involved, we believe the commission reached a conclusion which sufficiently approximates justice between this taxpayer and the state as to require approval of the result.

The decree of the District Court is affirmed.