[Civ. No. 4325. Third Appellate District.—December 17, 1930.]

In the Matter of the Estate of THOMAS G. ATKINSON, Deceased. LUCILE ATKINSON et al., Appellants, v. MARY A. ATKINSON et al., Respondents.

Nelson & Ricks for Appellants.

Mahan & Mahan for Respondents.

MR. PRESIDING JUSTICE FINCH DELIVERED THE OPINION OF THE COURT.—This is an appeal by Lucile Atkinson, Margaret Atkinson Gardner (formerly Margaret Atkinson) and Henry Atkinson, devisees and legatees named in the last will of the above-named decedent, from an order "admitting to probate as codicils to said last will . . . two certain writings appearing on pages one and two of said last will".

The will mentioned is typewritten and was duly attested by subscribing witnesses November 2, 1911. The second and third clauses thereof bequeath sums of money to persons named therein. The fourth clause gives money and described real estate to the decedent's wife. The fifth and sixth clauses read as follows:

"Fifth: All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath to my brother Edward Atkinson, of Escanaba, Michigan, to my sister Bessie Gleeson, wife of T. P. Gleeson of Green Bay, Wisconsin, to my sister Maggie Corcoran, of Escanaba, Michigan,

to my sister Jennie Jones, wife of B. W. Jones of Vulcan, Michigan, to my sister Ella Laughran, wife of C. J. Laughran of New Mexico, and to Lucile Atkinson, Margaret Atkinson and Henry Atkinson, children of my brother John Atkinson, deceased—share and share alike.

"Sixth: My brother John being dead and leaving the three children, Lucile, Margaret and Henry—who are now minors—I will that they shall not receive their shares under the preceding paragraph of this will until the youngest thereof surviving shall reach his or her majority, and that in the mean time I appoint the above named Edward Atkinson, Bessie Gleeson, Maggie Corcoran, Jennie Jones and Ella Laughran trustees, without bond, to have and hold the shares of such children, as aforesaid, and to invest and reinvest the same as occasion requires for the best interests of such children and their said estate, the share of each in which with the accumulations thereof shall be paid to them respectively when the youngest surviving in case of death of either before distribution to them shall reach his or her majority. In case either of such children shall die without issue before the distribution to them shall be made the share of such child so dying without issue shall go to the survivors of such children, but if such child dying shall leave issue the share of such deceased child shall go to such issue share and share alike."

On July 9, 1913, the decedent drew ink lines through the words of the second and third clauses of the will and wrote, in red ink, across the typewritten lines thereof the following:

"July 9 1913

"I cut out this part of will

"T. G. Atkinson"

At the same time and in the same manner he wrote across the lines of the sixth paragraph, but without drawing any lines through the words thereof, the following:

"July 9th 1913

"John Atkinson children are to get John share in this will

"T. G. Atkinson."

Appellants admit that the second and third clauses were effectively canceled and the only contentions made by them relate to the writing over the sixth clause.

■ The mere presence of typewritten words upon the paper upon which the codicil is written does not render the olographic codicil, of which such words form no part, invalid. (*Estate of De Caccia*, 205 Cal. 719 [61 A. L. R. 393, 273 Pac. 552]; *Estate of Oldham*, 203 Cal. 618 [265 Pac. 183].)

■ Appellants contend that by the olographic codicil the testator "sought to make a new will by making certain changes on the face of the old will and retaining the remaining provisions thereof that were not scratched out or written over. The altered document, as thus changed was intended to be his revised original will". It is of no materiality that the codicil is written upon one of the sheets of the original will, except that the document referred to in the codicil is thereby more clearly identified. "It has long been settled that a will or codicil executed in accordance with the requirements of statute may, by an appropriate reference, incorporate within itself a document or paper not so executed." (*Estate of Plumel*, 151 Cal. 77, 79 [121 Am. St. Rep. 100, 90 Pac. 192, 193].) The codicil considered in the case cited was olographic. It certainly is no objection that a document so incorporated has been formally executed as a will. "The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil." (Civ. Code, sec. 1287.) In the case of *In re Soher*, 78 Cal. 477, 479 [21 Pac. 8, 9], it is said: "The argument is, that the olographic codicil cannot be understood without reference to the attested will; that the latter is in contemplation of law 'a part' of the former, and that therefore it does not come within the definition of an olographic will, which is a will 'entirely written, dated and signed by the hand of the testator himself'. . . . The only difference between an olographic and an attested will is in the form of execution. . . . One form is the precise equivalent of the other. . . . Whatever may be done in or by the one may be done in or by the other." The document referred to in the *Estate of Plumel, supra,* was an invalid olographic will, and the decision is based upon the terms thereof, which terms are in no manner mentioned in the codicil. See, also, *Estate of Johnston,* 64 Cal. App. 197 [221 Pac. 382], and *Estate of Sullivan,* 94 Cal. App. 674 [271 Pac. 753]. ■ It is true that the writing is not denominated by the testator as a

codicil, but no reason appears for requiring greater formality in the execution of a codicil than in the execution of an original will, and many olographic wills have been held valid which were not expressly called wills by their makers. *Estate of Spitzer,* 196 Cal. 301 [237 Pac 739], and *Estate of Beffa,* 54 Cal. App. 186 [201 Pac. 616], illustrate the liberality indulged in favor of such wills.

The question presented by this appeal is whether the codicil is testamentary in character and not the proper construction to be placed upon it or upon the terms of the original will. (*Estate of Spitzer, supra.*) It is necessary, however, to determine, incidental to the question of the admission of the codicil to probate, whether it is so uncertain and meaningless as to be wholly ineffective and therefore void.

Appellants contend that because the testator's brother John had no share under the will the reference in the codicil to "John share in this will" is meaningless and that therefore the codicil is void for uncertainty. "A will is to be construed according to the intention of the testator." (Civ. Code, sec. 1317.) "In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." (Civ. Code, sec. 1318.) "Several testamentary instruments, executed by the same testator, are to be taken and construed together as one instrument." (Civ. Code, sec. 1320.) "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative." (Civ. Code, sec. 1325.) "When, applying a will, it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence; but evidence of the declarations of the testator as to his intentions cannot be received." (Civ. Code, sec. 1340.)

"Particular words are not requisite to create a legacy or devise. It is essential that the intention of the testator to make the gift be shown. . . . The cardinal rule for the construction of wills is to ascertain the intention of the

testator, and this is determined from the words of the will, considering the circumstances under which it was made, if there is any uncertainty in its language. . . . The will and its entire scheme, the property disposed of, the persons named as devisees and legatees, the words and the context should be considered together, and words used in the will should be construed according to their surroundings. . . . It is equally well settled that a devise or bequest may arise by implication. To warrant the court in so declaring there must be something more than conjecture. The probability of an intention to make the gift implied must appear to be so strong that an intention contrary to that imputed to the testator cannot be supposed to have existed in his mind. . . . '' (*Estate of Franck*, 190 Cal. 28, 31 [210 Pac. 417, 418].)

''The primary purpose of all interpretation of wills is, of course, to ascertain the testator's intent, as disclosed by the language he has used. . . . Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value.'' (*Estate of Henderson*, 161 Cal. 353, 357 [119 Pac. 496, 498].)

''While, of course, conjecture and speculation cannot be indulged in to import into the will of a testator something which no language by him warrants simply because he seems to have omitted something which it is reasonable to assume should have been provided for, still when he has used language which can be reasonably interpreted to raise a devise, it should be so construed. . . . While the intention of the testator is to be reached from what he has said, this includes not only a determination of what he meant by the explicit use of language but also the necessary implication arising from language which he has employed, though less explicit.'' (*Estate of Blake*, 157 Cal. 448, 467, 468 [108 Pac. 287, 295].)

In *Estate of Bennett*, 134 Cal. 320 [66 Pac. 370], the court had under consideration the following clause of an olographic will: ''In case of the death of any of the legatees of my estate under this will before distribution, then and in that case the portion so bequeathed to such legatee shall revert to the children of the family of which such legatee is a member, share and share alike.'' It is perfectly clear

that property cannot revert to a person who has never owned any interest therein, but the court found no difficulty in giving effect to the evident intention of the testator by holding that by the use of the word ''revert'' the testator meant that the property was to ''go'' to the persons indicated. In the *Matter of Estate of Wood*, 36 Cal. 75, the will there under consideration reads as follows: ''I wish five thousand dollars to go to John C. Cole, in the event of my dying intestate,'' etc. It was contended that ''if this instrument is a will, then the deceased did not die intestate, and the event upon which the property take the direction indicated has not, and cannot transpire''. In overruling the contention, the court said: ''If a word has no meaning, or is absurd, or repugnant to the clear intention manifested in other parts, it may be regarded as surplusage, or restricted in its application. . . . We see no reason why the same rule should not apply in interpreting the language of an instrument for the purpose of determining whether it is a will or not. . . . Upon the whole instrument, it is perfectly plain to our minds, that the deceased intended to make a disposition of his property in case of his death, and he evidently meant by the term 'dying intestate', dying without making any further or other will.''

The testator in the instant case had a brother and four sisters, each of whom had children. Another brother, John, had died, leaving three children, the appellants. Apparently the testator was on friendly terms with and had implicit confidence in his living brother and sisters, because he gave them equal shares in his estate and appointed them trustees of the estates of John's children, without bonds. Under such circumstances, it would be an unnatural division for the testator to give John's three children a total of three times as much property as that given to the brother or either sister. By the fifth clause of the will, the living brother and sisters were given equal shares in the testator's property. While technically inaccurate, it was not unnatural for the testator to refer to the share he would have given to his brother John, if living, as John's share. In common parlance it is not unusual to refer to the property which one possibly or probably may receive from the estate of a relative as his share of such estate. Had John been living when the codicil was executed the term John's share would

clearly imply a share equal to those respectively of the other brother and the sisters. It seems equally clear that the testator intended by the codicil to give John's children the share which would have been given to John if he had been living, that is, a share equal to that given to each of the living brother and sisters. Laymen would so understand the language used and, since the testator was not a lawyer, it is a fair inference that he so understood it. The intention of the testator clearly appearing from the inartificial language used by him, that intention should be carried into effect.

The order is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 16, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.