[Civ. No. 14053. First Dist., Div. Two. Sept. 26, 1949.]

Estate of VIOLA C. CARR, Deceased. ELIZABETH CARR SULLIVAN, Respondent, v. H. G. JORGENSEN et al., Appellants.

Hudson, Martin, Ferrante & Street for Appellants.

Mahaney, McDonald & Isenberg for Respondent.

GOODELL, J.—Viola C. Carr died in Monterey on August 4, 1943, aged over 90 years. She was a widow and had no children or grandchildren. Her heirs at law are two nieces, Adelina W. Kennedy and Alice Kennedy Shallberg, and a

nephew, Phillip Sheridan Kennedy. The respondent Elizabeth Carr Sullivan was her husband's sister.

Mrs. Carr had lived in Monterey for many years. Carmel Martin had been a close family friend and legal adviser.

Decedent left two wills, both dated January 16, 1935, and both entirely written, dated and signed by her. In one the respondent Elizabeth Carr Sullivan is named as residuary legatee and devisee and in the other Carmel Martin and family are named as residuary legatees and devisees.

To the Sullivan will there are two codicils, dated June 18 and 19, 1935; to the Martin will there is a codicil dated September 18, 1937. All three codicils are entirely written, dated and signed by the decedent.

·Both wills and their codicils were laid before the court by an amended petition wherein the executor alleged that he believed the Martin will and codicil to be, and the Sullivan will and codicils not to be, the last will and testament. The three heirs at law filed a contest to the Martin will on the ground of undue influence. The court, with both wills before it, admitted the Martin will and rejected the Sullivan will, but on appeal that order was reversed on the ground that no will could be admitted while a contest thereof was pending (*Estate of Carr*, 82 Cal.App.2d 780 [187 P.2d 912]).

When the contest came on for trial there was submitted to the jury, in addition to the issue of undue influence, the issue as to which of the two sets of testamentary documents was the last will and testament. By one verdict the jury upheld the Martin will as against the charge of undue influence and by another verdict it determined that the Sullivan will and its two codicils constituted the last will and testament.

No appeal was taken on the undue influence issue. On the verdict in favor of Elizabeth Carr Sullivan a judgment was entered and this appeal followed.

Both wills and all three codicils were written on letter paper apparently taken from ordinary writing tablets.

In each of the wills of January 16, there are six provisions in substantially the same language but they are not material here. They are followed by the disposition of the residue, in one will to respondent, in the other to Carmel Martin and family.

The Sullivan will contains the following clause not found in the Martin will: "I hereby revoke all wills and codicils to wills heretofore made by me,"

˴ The Sullivan will, written on two sheets, is followed by a third sheet reading:

"Monterey California
June 18—1935

"I, Viola C. Carr do hereby make this codicil to my last will dated January 16, 1935, and hereby confirm my said last will in all respects, save and except that all money or cash that may be in my safe or on my person at the time of my death, shall be used by my executors named in my said last will to pay my funeral and burial expenses, the expenses of my last illness and my just debt and the costs of the administration of my estate. Should there be any balance remaining after said disbursements, then I give to my friend Carmel Martin all of the remainder of said cash or money

Viola C. Carr"

"I also give to Carmel Martin all moneys remaining unpaid on the contract of sale of my property to T. A. Work

Viola C. Carr

June 19—1935"

On the lower part of the second page of the Martin will immediately beneath the testatrix' signature thereto is the following: "September 18th 1937 I will all my personal belongings to Carmel Martin and family Viola C. Carr."

Carmel Martin testified that Mrs. Carr sent for him, and at her home he wrote out and she later copied the form which became the Sullivan will. The next day it was left at his office. Again she sent for him and said she desired to make the changes found in the codicil of June 18. To his statement that "Just because I am your friend and your attorney it doesn't mean you should make any provisions for me" she replied "That is the way I want it," and he wrote out that form, which she copied. The next day she added the provision respecting the contract. The Sullivan will with its two codicils remained in the safe in his office from the time they were made until after decedent's death.

Albert Elashio, a close friend of Mrs. Carr, testified that about a year before her death she told him that a strongbox in her home contained "a will paper and some deeds" and requested him to take the box immediately on her death to Carmel Martin. He did so, and Carmel Martin testified that he first saw the Martin will on the day of decedent's death,

It was in the box, in an envelope marked "My will Viola C. Carr."

The question for decision is whether there is any evidence on which the jury could have found the Sullivan documents to constitute the last will and testament.

*Estate of Plumel,* 151 Cal. 77 [90 P. 192, 121 Am.St.Rep. 100] presented the interesting situation where an abortive holographic will written on one side of a piece of paper was held to have been incorporated by a codicil written on the other side of the paper. In so holding the court at page 80 said: "In Jarman on Wills, (p. 153) it is said: 'It seems to have been considered, in the ecclesiastical courts at least, that the fact of the codicil being written on the same piece of paper as the prior will (though it does not in terms refer to such will), sufficiently indicates an intention to treat that as the subsisting will.' In *Hobart* v. *Hobart,* 154 Ill. 610, [45 Am. St.Rep. 151, 39 N.E. 581], the court said 'Where the codicil is written on the same piece of paper as the will, or clearly and unmistakably refers to the will, so as to preclude all doubt of its identity, proof of the codicil establishes the will without further proof, except such portions thereof as are revoked or altered by the codicil.' "

*Estate of Cazaurang,* 42 Cal.App.2d 796 [110 P.2d 138] followed the same rule. There an holographic codicil was written in 1929 on the bottom of an holographic will made in 1927, which latter will had been revoked by an intervening witnessed will made in 1928. It was held that the 1929 codicil republished and reexecuted the 1927 will as the last will. The court said (p. 800) that the testator "could hardly have intended it merely as a change in his 1928 will because he made no reference to that instrument *by attachment or otherwise*" (emphasis added). A hearing by the Supreme Court was denied.

The fact that the codicil dated September 18, 1937, is written upon the Martin will brings this case squarely within the rule of the Plumel and Cazaurang cases.

It is true there are two factors in the Plumel case which are not found herein. (1st) There the second writing was labeled "codicil," while here the writing of September 18, 1937, was not. The same factor was likewise absent from the Cazaurang case. Such absence, however, is not important (*Estate of Atkinson,* 110 Cal.App. 499, 502-3 [294 P. 425]). (2d) In the Plumel case no other will was produced; here there was another will but it antedated the codicil of Septem-

ber 18, 1937, just as in the Cazaurang case, but there was *no later will* and in the latter opinion it was pointed out that the 1929 codicil could not have related to the earlier (1928) will because it made no reference to it "by attachment or otherwise." The same comment applies here with equal force. There is no evidence in this record from which the jury could have found that the writing of September 18, 1937, was connected or identified with the Sullivan will.

The Plumel case has been repeatedly followed (*Estate of Cross,* 163 Cal. 778, 781 [127 P. 70] ; *Simon* v. *Grayson,* 15 Cal.2d 531, 533, 534 [102 P.2d 1081] ; *Estate of Wunderle,* 30 Cal.2d 274, 281 [181 P.2d 874] ; *Estate of Smith,* 31 Cal.2d 563, 568 [191 P.2d 413] ; *Estate of Sullivan,* 94 Cal.App. 674, 678, 679 [271 P. 753] ; *Estate of Cazaurang, supra*) and stands as unquestioned authority in this state.

Under the rule of that case the codicil of September 18, 1937, must be held on this record to relate and apply only to the will on which it is written. If truly dated, it "establishes [that] will without further proof" (*Hobart* v. *Hobart, supra*) as of its date (26 Cal.Jur. 829), namely, September 18, 1937.

As that date is two years and three months later than the Sullivan codicils it is difficult to see how the jury could have found the Sullivan documents to be the last will unless it concluded that the codicil written on the Martin will was incorrectly dated, of which there is no evidence whatever.

█ The date which an holographic will or codicil bears is presumed to be its true date (*Estate of Fay,* 145 Cal. 82, 84, 85 [78 P. 340, 104 Am.St.Rep. 17] ; *Estate of Wilkinson,* 113 Cal. App. 645, 648 [298 P. 1037]).

The statute itself creates a disputable presumption "That a writing is truly dated" (Code Civ. Proc., § 1963, subd. 23) and section 1961 provides that "unless . . . controverted the jury are bound to find according to the presumption." (See, also, *Stafford* v. *Martinoni,* 192 Cal. 724, 738 [221 P. 919].)

█ With respect to the Sullivan documents, Carmel Martin's testimony is undisputed that they were written on the dates they bear. With respect to the Martin will, there is no evidence whatever to dispel the presumption that the codicil was written on September 18, 1937.

It follows that there was no issue of fact for the jury. The motion for a directed verdict should have been granted and the jury instructed that the codicil of September 18, 1937, established the Martin will (as of the latter date) as the last

will and testament. The motion for judgment notwithstanding the verdict, made on the same ground, should likewise have been granted.

Respondent contends that the revocation clause, contained in the Sullivan will but not in the Martin will, left a question of fact for the jury. It could not have done so since under the reasoning of the Cazaurang case the later codicil republished the earlier will to which it was physically attached.

Respondent also claims that the codicil of September 18, 1937, modifies the Sullivan will instead of republishing the Martin will. The argument is that the language "I will all my personal belongings to Carmel Martin and family" has no meaning or effect if applied to the Martin will. That language created a distinct bequest of chattels, "personal belongings," susceptible of identification and manual delivery whereas the residuary clause "embraces only that which remains after all the bequests of the will are discharged" (Prob. Code, § 161). The two testamentary dispositions are quite distinct; each has a decidedly different legal meaning and effect.

Other points raised by both sides need not be discussed in view of the conclusion already reached herein.

The judgment appealed from is reversed with the direction to the trial court to admit to probate as the last will and testament the document dated January 16, 1935, of which the writing of September 18, 1937, is a part, and to deny probate to the document dated January 16, 1935, of which the writings of June 18, 1935, and June 19, 1935, are parts.

Nourse, P. J., concurred.

Dooling J., having heard and denied a motion to dismiss the contest herein while sitting in the superior court, refrains from participating in this decision.

A petition for a rehearing was denied October 26, 1949, and respondent's petition for a hearing by the Supreme Court was denied November 21, 1949. Carter, J., voted for a hearing.