Hillsborough, }
  Dec. 1, 1908. }

### MANAGLE, *Adm'x*, v. PARKER, *Ap't.*

The presumption of revocation, which arises from the testator's destruction of that copy of his will which is in his possession, is one of fact and not of law.

Where a testator executes a will in duplicate and subsequently destroys the copy in his possession, evidence of his oral declarations is admissible to prove that the act of destruction was not *animo revocandi*.

An objection to evidence is regarded as waived unless stated at the trial in response to the suggestion of the court.

The submission of special questions to the jury, for the purpose of finding certain facts material upon the main issue, is a matter determinable by the trial court.

PROBATE APPEAL. Trial by jury upon the issue of revocation, and verdict sustaining the will. Transferred from the

January term, 1908, of the superior court by *Plummer*, J. The case has been before the court upon a former transfer and is reported 74 N. H. 422.

.The evidence tended to show that the paper offered for probate was executed as a will by Hannah Stevens, September 14, 1899. Before it was signed and witnessed a line was crossed out. Shortly thereafter a second draft, identical with the first draft except for the erasure, was executed before the same witnesses at the request of the attorney who drew the will, because he did not wish a paper prepared by him to go to probate in the condition of the first draft. When the second draft was signed Miss Stevens gave the first to one of the witnesses, Mrs. Noyes, " to keep in case anything happened " to the second, which the testatrix retained in her possession. Mrs. Noyes kept the first draft until about three weeks before Miss Stevens died, when it was delivered to an attorney, who retained it until it was offered for probate. Miss Stevens kept the second draft in her own possession and within two years voluntarily destroyed it by tearing. At that time she declared that she did not like it and would not have it. She died August 12, 1906.

Subject to the defendant's exception, Mrs. Noyes testified that about two years after the will was made the testatrix asked if she still had the paper which had been given her, and said that the one she had kept had been destroyed because some of her relatives had made a fuss; that the testatrix said she had earned the money herself, had a right to dispose of it as she saw fit, and would like to see the faces of her relatives when the will was read. Subject to the same exception, Dr. Danforth testified that about two weeks before her death Miss Stevens said that she was very fond of Minnie (the residuary legatee) and did not know how she could get along without her; that she was going to take care of or provide for Minnie if it lay in her power, and that " that was fixed."

The defendant's request that the jury answer the question whether the second draft was intended as a substitute for the first was denied, and she excepted. Subject to the defendant's exception, the only issue left to the jury was that of revocation. At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved for the dismissal of the petition and the direction of a verdict in her favor on the issue submitted. The motions were denied, and she excepted.

*John O'Neill* and *Burnham, Brown, Jones & Warren*, for the plaintiff.

*David W. Perkins* and *Taggart, Tuttle, Burroughs & Wyman*, for the defendant.

PEASLEE, J.   Evidence of the testatrix's declarations was properly admitted.   The issue of revocation involved two distinct facts: the physical act of destruction and the intent with which the act was done.   "All the destroying in the world without intention will not revoke a will, nor all the intention in the world without destroying; there must be the two."   *Cheese* v. *Lovejoy*, L. R. 2 Pro. Div. 251.   The question in the present case is whether the declarations are evidence of intent.   That they are not evidence by which the physical act of destruction might be proved (*Stevens* v. *Stevens*, 72 N. H. 360) may be conceded.

   " If the will was executed in duplicate, and the testator destroys one part, the inference generally is that he intended to revoke the will; but the strength of the presumption will depend much on the circumstances.   Thus, if he destroys the only copy in his possession, an intent to revoke is very strongly to be presumed; but if he was possessed of both copies and destroys but one, it is weaker; and if he alters one and then destroys it, retaining the other entire, the presumption has been said still to hold, though more faintly; but the contrary also has been asserted."   2 Gr. Ev., s. 682.

   " This class of presumptions embraces all the connections and relations between the facts proved and the hypothesis stated and defended, whether they are mechanical and physical, or of a purely moral nature.   It is that which prevails in the ordinary affairs of life, namely, the process of ascertaining one fact from the existence of another, without the aid of any rule of law; and, therefore, it falls within the exclusive province of the jury, who are bound to find according to the truth.   .   .   .   They are usually aided in their labors by the advice and instructions of the judge, more or less strongly urged at his discretion; but the whole matter is free before them, unembarrassed by any considerations of policy or convenience, and unlimited by any boundaries but those of truth, to be decided by themselves, according to the convictions of their own understanding."   1 Gr. Ev., s. 48.

   When it is said that a presumption of intent to revoke arises from the testator's act of destroying that copy of a will executed in duplicate which is within his reach, it is not to be inferred that a presumption *juris et de jure* is meant.   The presumption referred to is not an irrebuttable conclusion of law.   It is a mere inference of fact.   That a man intends the usual and ordinary consequences of his acts is a fact so well known that such intent is inferred from the common knowledge of the ordinary way in which desire compels accomplishment.   But the rule is not universal.   Notwithstanding its existence, other facts may appear which outweigh this fact so commonly known.   Neither by statute nor by common

law has this presumption of intent been made a preferred class of evidence, to be received to the exclusion of other evidence on the same issue. As has been said of the presumption in favor of a will executed according to the forms of law, " it is a presumption of fact and not of law." *Edgerly* v. *Edgerly*, 73 N. H. 407.

From the facts surrounding the execution of the two documents by the deceased, it could be found that she intended them for duplicate wills and that she understood that the copy left with her neighbor would continue to be her will, no matter what was done with the copy she herself retained. There is no evidence (other than by way of presumption) that the testatrix ever had a different understanding. It is true that there was evidence that at the time she destroyed the copy of the will in her possession she said she did not like it and would not have it. Undoubtedly this was sufficient evidence to support a finding that she intended to revoke her will; but it was not a preferred class of evidence of intent. Taken in connection with the evidence of her understanding as to the force and effect of the other copy, and considering the fact that she allowed that copy to continue in the custody of her near neighbor and friend for five years after the destruction of the copy she herself had, the evidence of intent to revoke the existing copy is of a dubious sort. That is, there are facts in evidence from which different inferences may be drawn.

" He does not revoke it if he does not treat it as being valid at the time when he sets about to destroy it." *Giles* v. *Warren*, L. R. 2 P. & D. 401. The same principle is involved here. She did not revoke the will if she understood that the destruction of the copy in her possession left the other copy in force. " The mere physical act of destruction is itself equivocal, and may be deprived of all revoking efficacy by explanatory evidence, indicating the *animus revocandi* to be wanting." 1 Jar. Wills *130. Her intent being an essential part of a valid revocation, and the act of cancellation and the accompanying words not being a preferred class of evidence on the question of intent, the question is how far her then present purpose or state of mind may be shown by her subsequent declarations upon the same subject.

Two theories for the admission of the testator's declarations touching his will have been advanced. The first is that they constitute an exception to the hearsay rule. This theory has been applied in a limited way in this state. *Lane* v. *Hill*, 68 N. H. 275. The second is that the declarations show present state of mind; that on the doctrine of continuity, the past state of mind can be inferred from the present one, and that the past act may be inferred from the state of mind at the time the act was done. 3 Wig. Ev., *s.* 1736. The latter theory is contrary to the recent decision of this court. *Stevens* v. *Stevens*, 72 N. H. 360.

Outside this state the question has been considered in many jurisdictions, and radically different results have been reached. *Throckmorton* v. *Holt*, 180 U. S. 552. The considerations influencing the courts seem to have been largely those of policy, and few of the results can be justified in their entirety upon any scientific theory of what is admissible evidence. Thus, in our own case of *Lane* v. *Hill*, *supra*, the excepted hearsay as far as it relates to the formal acts of execution or revocation is said to be admissible, but only in corroboration of " direct evidence " bearing on the fact in issue. How much direct evidence there must be to furnish a support for this testimony, whether the direct evidence may be contradicted and overborne by this excepted hearsay, or whether this class of evidence is to be used only by the producer of " direct evidence " tending to support his contention, are questions not answered nor considered in that case. Nor is it necessary to consider them here; for the issue is as to intent only, and " the formalities prescribed by law " are not involved. There is here no attempt to substitute the testator's understanding for the acts which the statute demands, as there was in *Hoitt* v. *Hoitt*, 63 N. H. 475, and *Stevens* v. *Stevens*, 72 N. H. 360. That the formal act essential to a revocation was performed is admitted. The issue is as to the intent with which the act was done.

The illustration used in *Lane* v. *Hill*, *supra*, goes far beyond what is required to make this evidence admissible: " If the issue were whether a will duly executed were a forged or genuine will, and the evidence were evenly balanced, would not evidence that the supposed will remained in the testator's possession, that he was seen to examine it, that he spoke of it as his will, be of the highest moral convincing force in favor of the will ? No logical reason appears why such should not be legal evidence." So far as the present case differs from the foregoing illustration, it is stronger for the admission of the evidence. There " an inference was required from the subsequent state of mind to the prior act, while here the inference is merely from the subsequent to the prior state of mind." 3 Wig. Ev., s. 1737; *Curtice* v. *Dixon*, 74 N. H. 386, 397.

While the limitations put upon the use of this class of evidence may not be wholly satisfactory or entirely definite, they have been sufficiently established to sustain the ruling of the superior court. The declarations were admitted solely for the purpose of showing the intent of the testatrix when she destroyed the copy of the will in her possession. " The state of mind of a testatrix before and after cancellation of a will being relevant in inferring the intent at the time of cancellation, the testator's declarations before and after revocation are evidence of his state of mind at those times." 3 Wig. Ev., s. 1737, note 3; *Pickens* v. *Davis*, 134 Mass. 252.

Much that has been said in argument and in the cases relied upon by counsel, as to the policy of the law requiring certain formalities to guard against frauds in the matter of wills of deceased persons, is wide of the mark. It is true that the execution of a will is surrounded by statutory formalities, and so is a written revocation of a will. P. S., c. 186, s. 14. But there are other methods of revocation, recognized by the legislature as valid, proof of which is still left to be made under the ordinary rules of evidence. For example, in the present case proof that one copy of the will was destroyed by the testatrix, and that the act was accompanied by words indicating a revocatory intent, rested entirely upon the uncorroborated oral testimony of one person. If the controversy related to some other subject, the evidence now objected to would plainly be admissible under the law of this state. *Keefe* v. *Railroad, ante,* 116. The original statute of frauds (29 Car. II, c. 3, s. 6), from which our statute (P. S., c. 186, s. 14) is copied, " has not been construed so strictly as to exclude all evidence tending to show *quo animo* the act was done, which is a conclusion to be drawn by a court or jury from all the circumstances." 1 Jar. Wills *130.

It is urged that the case for the administratrix rests upon fraud—that she seeks to show that the testatrix attempted to deceive her heirs-at-law. The point of view from which this argument is advanced is one not infrequently assumed by prospective heirs who regard the estate of an aged relative as already their lawful property. Much stress is laid upon the utterance of the court in *Boylan* v. *Meeker,* 28 N. J. Law 274, 276, 283; but an examination of the argument there advanced shows that it makes against as well as for the position of the contestants. The devisor " may, to secure his own peace and comfort during life, . . . conceal the nature of his testamentary dispositions, and make statements calculated and intended to deceive those with whom he is conversing. He is neither under the sanctity of an oath nor the strong bond of self-interest to secure his adherence to the truth." So here, the testatrix may well have intended to dispose of the entreaties of importunate heirs by a pretended destruction of her will. The declarations which were excepted to have a different trend. The conversation with Mrs. Noyes " has all the evidences of sincerity and reality about it which might be looked for where the object was not merely to parry or evade a disagreeable subject, or to baffle impertinent curiosity. . . . Here is that fulness of detail, and reference to persons and events, and also speculations of the probable conduct of those opposed to the will, as gives it all the appearance of reality and attests its genuineness and sincerity." *McBeth* v. *McBeth,* 11 Ala. 596, 602; *McDonald* v. *McDonald,* 142 Ind. 55.

But these considerations seem logically to go only to the weight of the evidence. As was said in *Collagan* v. *Burns*, 57 Me. 449, 458: " The declarations of the testator may have been false and uttered to deceive; or, being true, they may have been misunderstood, in whole or in part, from inattention; they may have been misrecollected from forgetfulness, or misreported from design. But all this affects the degree of credit to be given the testimony, not its admissibility. It shows that caution should be used in weighing it, not that it should be excluded. The exclusion of evidence, relevant and material, from the fear that it may not receive its just degree of credence, is the rude resort of barbarism. Civilization hears, weighs, examines, compares, and then decides."

The objection now made to the testimony of Dr. Danforth, on the ground that the declaration testified to does not relate to the will, comes too late. When this evidence was introduced the presiding justice cautioned counsel that the ground of objection should be stated specifically. Not only was there a failure to then state this ground, but counsel said that he had no ground other than those already stated. The objection was waived.

There was no error in refusing to direct a verdict for the contestant upon the issue of revocation. " Whenever facts that would sustain the will are put in evidence, together with other facts from which an inference unfavorable to its validity may be drawn, the question of whether the unfavorable inference should be drawn, and if so whether it has been rebutted, are both questions of fact." *Edgerly* v. *Edgerly*, 73 N. H. 407, 408. The evidence warranted a finding that the testatrix executed duplicate wills, and that she did not intend to cancel the copy held by Mrs. Noyes, by the destruction of the copy in her own possession.

The refusal to submit to the jury the special question whether the second draft of the will was intended as a substitute for the first raises no question of law. The issue framed and tried was whether the testatrix had revoked her will. Whether certain facts which might be material on that issue should or should not be specially found by verdict of the jury was for the presiding justice to determine.

*Exceptions overruled.*

All concurred.