[S. F. No. 12731. In Bank.—December 15, 1928.]

In the Matter of the Estate of GEORGE ADAM ARNOLD De CACCIA, *alias,* Deceased. WILLIAM De CACCIA et al., Appellants, v. LILLIAN E. BARRINGTON et al., Respondents.

Carter & Petersen, Fred C. Petersen, D. T. Gardner, Albert Michelson and W. Reginald Jones for Appellants.

Edward R. Eliassen and Walter H. Eliassen for Respondents.

CURTIS, J.—George Adam Arnold De Caccia, at the time of his death, was a resident of the county of Alameda. He had been a resident of Oakland, in said county, but at the time of his death, and at the time he made and signed the document hereinafter referred to, and claimed to be his last will and testament, he was a resident of Alameda, in said county. He died on the fifteenth day of February, 1927, and left surviving him as his only heirs at law, Lillian E. Barrington, Arnold De Caccia, Anna Cavanagh, William De Caccia, his children, and Phillis and Millard De Caccia, minor children of a predeceased son. He left a document, which appellants claim was entirely written, dated and signed by him and was, therefore, his last will and testament. By this document decedent purported to leave his entire estate, except one dollar to each of his children, to Mrs. Annie R. Weeks. The said Annie R. Weeks assigned all of her interest in the estate of said deceased to the said William De Caccia, the son of said deceased, and the two grandchildren of deceased, Phillis and Millard De Caccia. Thereupon the said William De Caccia filed a petition for the probate of said instrument as the last will and testament of said deceased. His petition was opposed by the said Lillian E. Barrington, Arnold De Caccia and Anna Cavanagh, three of the surviving children and heirs of said decedent. These three children were not mentioned in the assignment by Mrs. Annie R. Weeks of her interest in said estate to William De Caccia, the son, and Phillis and Mil-

lard De Caccia, the grandchildren of said decedent. These three children of said deceased, omitted from said assignment, filed their written contest and opposition to the probate of said document as the will of decedent. Among other grounds set forth in their written contest and opposition was that said alleged or purported will of said decedent, bearing date the fourteenth day of February, 1927, was not wholly written, dated, and signed by the said decedent. William De Caccia, and Phillis and Millard De Caccia, by and through Lucille De Caccia, their guardian, filed an answer in which they denied the allegations of the written contest and opposition, and particularly those referring to the failure of decedent to properly execute the document dated February 14, 1927, as an holographic testament. Before the trial all grounds of contest except that attacking the due and legal execution of said purported will were withdrawn, and a trial was had upon the one issue as to whether the instrument in question was entirely written, dated, and signed by the hand of the testator. The said instrument, claimed by appellants to be the last will of said decedent, was written upon stationery upon which the words, "Oakland, California," were printed, and the whole document containing both the printed and written matter was as follows:

It was stipulated at the trial that all of the written matter appearing on said document was in the handwriting of

the decedent, and that the words, "Oakland, California," were not written by the decedent, but were embossed on said paper prior to the time the decedent wrote his purported will thereon. The stationery used was a double sheet of paper, and when folded consisted of four pages, the first of which would be the page on which were the printed words, "Oakland, California." The two inside pages would be pages two and three, and the remaining outside page would be page four. Decedent, for the purpose of writing his will, unfolded the double sheet and used only the two outside pages, being pages one and four. In writing his will he began the same near the upper left-hand corner of four and directly opposite the words, "Oakland, California," appearing on page one. Had he continued this first line of his will in a straight line across the portion of the two pages upon which he wrote the same the last words of said line would have been directly opposite the printed words, "Oakland, California." The decedent, however, was apparently not an experienced penman, and, as stated by counsel for one of the parties hereto, he wrote "a large, scrawling hand." In writing he did not follow a straight line, but gave his words a slightly upward slant toward the top of the page. The result of this peculiarity was that the last words in the first line of the instrument were slightly nearer the top of the page than the printed words, "Oakland, California," were. However, the line stopped over an inch to the left of these printed words. The next two lines of the writing were parallel to and approximately of the same length as the first, with the last words of the second line lower than the printed words. The fourth written line extended further across the page than the preceding lines to a point almost directly under and about one-half inch distant from the last letters of the printed word, "California." The balance of the writing extended substantially across the two pages, except two lines which contained the closing words of the two paragraphs of the instrument. The whole instrument consisted of nine lines only, including these two partial lines.

The trial court held that the words, "Oakland, California," were a part of the instrument executed and signed by the decedent, and, therefore, that the instrument was not entirely in the handwriting of the deceased, and for that

reason could not be and was not his last will and testament. Based upon this finding the court made its order denying the probate of said instrument as the last will and testament of decedent. From this order the proponents have appealed.

This court has frequently given consideration to instruments which were either holographic wills or which were claimed to be such (*Estate of Rand,* 61 Cal. 468 [44 Am. Rep. 555]; *Estate of Billings,* 64 Cal. 427 [1 Pac. 701]; *In re Soher,* 78 Cal. 477 [21 Pac. 8]; *Estate of Thorne,* 183 Cal. 512 [192 Pac. 19]; *Estate of Francis,* 191 Cal. 600 [217 Pac. 746]; *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404]; *Estate of Oldham,* 203 Cal. 618 [265 Pac. 183]). A review of all of these cases we think is entirely unnecessary for the purpose of considering the question arising in the present proceeding. *Estate of Bernard, supra,* and *Estate of Oldham, supra,* however, we think, have a direct bearing upon the legal status of the instrument under consideration in the estate now before us. In the former of these two cases decedent used stationery bearing the printed words, "Long Beach, California," for the purpose of drafting his will. The entire document with the exception of these three words was in the handwriting of the decedent. The document was held invalid as an holographic will. The decision was based, in part at least, upon the fact that immediately preceding this printed matter the testator had written certain words which were held to be a necessary part of his will, so that the caption of the instrument read: "The following 4 sheets of paper included, Long Beach, California, Oct. 12, 1918." Referring to this caption of the instrument the court said: "It thus appears that the decedent not only wished to make the date a part of the document, but to make, also, the printed portion, designating the place of the making of the document, an essential part of the document." In *Estate of Oldham, supra,* the testator used his own stationery upon which were printed his name and the building in which his office was located, followed by the words, "Los Angeles, Calif.," on a separate line. After the words, "Los Angeles, Calif.," the testator wrote the date the document was to bear and then proceeded to write out his will upon three sheets of paper, signing the same at its close, all in his own handwriting. In holding this to be a

valid will this court said: "It will thus be seen that in the *Estate of Bernard* great stress was laid upon the caption or heading of the document containing the printed words, and it was expressly held that by the use of this heading the deceased had made not only the date, which was absolutely necessary to the validity of the document as a testamentary disposition, but also 'the printed portion, designating the place of the making of the document, an essential part of the document.' In the instrument now before us and which, it is contended, is the last will of John Y. Oldham, deceased, we find no reference whatever to the printed words appearing upon stationery used by the deceased in the preparation of said instrument. These printed words are not expressly by direct reference, or impliedly, by inference or otherwise, made a part of the written instrument set forth on the sheets of paper on which they appear."

The instrument now before us resembles in many respects that held to be a valid holographic will in the *Estate of Oldham, supra.* The date simply follows the printed words appearing upon the instrument. The printed words are not preceded by any writing of the decedent in which a reference is made to said printed matter, as was found to be the case in *Estate of Bernard, supra,* indicating that it was the intention of the testator to make them a part of the instrument. It is true that decedent in the writing of the document began the same to the left and directly opposite to the printed words, and that the first line written by him ended slightly nearer the top of the page than were the words, "Oakland, California," but there was nothing in this line, or, for that matter, in any part of the instrument, referring in any manner to said printed words, much less indicating an intention to make them, as was said in *Estate of Bernard, supra,* "an essential part of the document." Respondents make mention of the fact that the first line of the will is slightly above the printed words, and rely upon this circumstance as indicating an intention by the testator to make the printed words a part of the will. Even if the testator intentionally wrote some part or the whole of the first line above the printed matter, but did not make any reference therein to the printed words, we hardly see how the mere fact of this relative position of the words in the instrument would indicate any intention to make the printed

words a part of the will. We think it quite evident, however, from an inspection of a photostatic copy of the will contained in the record that the position of the last few words of the first line of the writing being above the printed words, or nearer the top of the page than the printed words, was due not so much to any intention of the testator to so locate them as it was to his poor penmanship, or his habit of writing, which was to give to his writing an upward slant, rather than to write horizontally across the page. Not only the first line, but the whole instrument shares unmistakably this peculiar characteristic in decedent's writing. The fact, therefore, that a part of the first line, written by the deceased, was slightly above the printed words does not, in our opinion, show any intention to make the printed matter upon the paper a part of the document written thereon.

It is further contended by respondents that the deceased used scrupulous care to write the date, "Feb. 14th-27," on the same line and as close as possible to the printed words, "Oakland, California," and thus manifested a clear intention to connect the printed words in the instrument with the date of its execution. The difference between the relative position of the printed words and the written date following in the instrument now before us and in that considered in *Estate of Oldham, supra,* is so slight as to be almost negligible. In the Oldham will the date was so nearly in line with the words, "Los Angeles, Calif.," that in deciding that case we referred to them as "being followed by the date, written approximately on the same line." We do not believe that this slight difference in the two instruments in this respect would justify a decision in one upholding it as a legal instrument and in the other a decision declaring it invalid. In other words, we are of the opinion that the two instruments in the respect just referred to are so similar that the rules governing their construction must apply alike to both documents, and that if one was upheld as a valid will, the same ruling must apply to the other. In *Estate of Oldham, supra,* upon this branch of the case the court said: "It is claimed only that these (printed) words appearing upon the first sheet, being followed by the date, written approximately on the same line, are thus made a part of the written document itself. In *Estate of Bernard* a similar situation was referred to and was considered as a possible

circumstance which, taken in connection with the fact that these printed words appeared in the caption of the instrument along with words written by the deceased, tended to show an intent on the part of the deceased to make the printed words a part of the instrument itself. This circumstance standing alone, as it does in the present proceeding, is so slight that it would not warrant the conclusion that the deceased, by simply writing after the printed words the date of the document, thereby intended to make such printed words any part of the document itself.''

The foregoing excerpt from *Estate of Oldham, supra,* we feel is directly applicable to the facts in the present proceeding in so far as it refers to the position of the date following the printed matter in the purported will. The mere fact that the decedent placed the date immediately after and upon the exact line with the printed words in the instrument is not in itself sufficient to show that he thereby intended to make said printed words a part of said instrument. Nowhere in said instrument is there any reference made to the printed words upon the sheet of paper used by said decedent for the purpose of writing his will. The printed words are in no way essential to the validity of the instrument as a holographic will, and we are not to presume that the decedent made them a part of the instrument he executed without some evidence appearing upon the face of the instrument itself manifesting such an intention. The mere presence of printed matter upon stationery used by a person for the purpose of writing his holographic will which forms no part of the written instrument and to which no reference directly or indirectly is made in the written instrument, will not destroy the effect of such instrument as a holographic will.

The order denying petition for the probate of said will is reversed.

Langdon, J., Preston, J., Shenk, J., Richards, J., Seawell, J., and Waste, C. J., concurred.