[Civ. No. 11635.   First Dist., Div. One.—May 14, 1941.]

ESTATE OF LUELLA THOMPSON, Deceased.   BERT THOMPSON, Appellant, v. JAMES S. WOODS, Respondent.

Eugene H. O'Donnell for Appellant.

Gillis & Edwards and Andersen & Resner for Respondent.

WARD, J.—An appeal from an order admitting to probate an alleged lost or destroyed will. The court found that the will of Luella Thompson, deceased, was fraudulently destroyed by her husband, appellant herein, following her death. The appeal involves an attack upon the sufficiency of the evidence to sustain the findings and decree establishing the existence of the will, its effectiveness at the time of death and its loss or destruction thereafter.

A copy of the will, prepared from recollection by the attorney who originally drew it, was admitted in evidence. It bequeathed decedent's entire estate equally to her four adult children by a former marriage and recited that nothing was left to the husband because of a settlement having been had between them of their community interests. Mr. and Mrs. Thompson had been married approximately eighteen years. Following the granting of letters of administration to the husband, one of decedent's sons, respondent herein, petitioned for probate of the alleged lost or destroyed will, to which petition appellant filed objection.

■ Appellant seeks a reversal solely upon the claim of the insufficiency of the evidence. The existence of a will was proven by the following evidence: The attorney who drew it related the terms thereof. A former notary public, a friend of decedent, stated that Mrs. Thompson read the will to her; that during the reading, she, the notary, sat near by, looked on the instrument, "kept track" as the pages were turned, saw decedent's signature, and those of the witnesses thereto, and heard the provisions of the will. The conclusion that the will was in full force and effect at the time of decedent's death is based upon the testimony of two daughters-in-law and a son of Mrs. Thompson that on the day preceding her death she told them that she had advised her husband she had a will.

■ The weight of authority is that declarations of a testatrix are admissible on the issue of revocation. (79 A. L. R. 1498.) Appellant's argument that this statement by decedent is not the equivalent of a declaration that she had a will is untenable in view of decedent's further statement to her son that the will was "In my bank." In this connection, also, the testimony of a daughter-in-law on cross-examination reveals the following: "Q. But she told you on November 17th her will was in the safe deposit box in the bank? A. Yes. Q. Do you know what bank she referred to? A. The one on Fillmore. Q. The Geary-Fillmore Branch of the Anglo-California Trust Company? A. Yes, where she had the safe deposit box." The evidence was sufficient to show that the will was in existence and that decedent did not, at least one day before her death, intend to revoke it.

■ The provisions of section 350 of the Probate Code, that the terms of a fraudulently destroyed will must be clearly and distinctly proved by at least two credible witnesses, simply mean that the probate court being satisfied as to the credibility of the two witnesses, the quantity and quality of the evidence in support of the destroyed document rest within its sound discretion. Each case must be decided upon the facts presented. ■ Ordinarily a witness who does not personally read, but merely listens to the reading of a will, is incompetent to prove its contents (*Estate of Guinasso*, 13 Cal. App. 518 [110 Pac. 335]), but where, as in the present case, a witness sees the instrument, is able to testify from personal knowledge as to its testamentary provisions, and follows its reading paragraph by paragraph, we are not prepared to

hold that such evidence is incompetent, even though the will was not actually placed in the hands of the witness.

No witness was produced who saw the will subsequent to the death of Mrs. Thompson. Appellant contends that when a will cannot be found after a testator's death a presumption arises that it was destroyed by the maker with the intention of revocation. In *Estate of Ross*, 199 Cal. 641, 647, 648 [250 Pac. 676], referring to *Estate of Sweetman*, 185 Cal. 27 [195 Pac. 918], the court said: "We are in accord with the rule which seems to have been approved in that case, that the presumption of revocation does not apply, or is overcome and is rebutted, where it appears that the will was deposited by the deceased with a custodian and that the deceased did not thereafter have it in her possession or have access to it. . . . But if the opinion in that case be deemed to hold that when the facts which raise the presumption of revocation are shown such presumption is met and rebutted by the presumption of continuing existence, as announced in subdivision 32 of section 1963, or that the latter presumption, coupled with proof of the existence of the will at some time prior to death, supplies the proof of the existence of the will at the time of death, as required by said section 1339, we are not in accord with that conclusion and the case is overruled to that extent. The Sweetman case was decided by a divided court, and the dissenting opinion serves to accentuate the importance of applying the presumption of revocation when the facts, as in this case, call for its operation, regardless of the presumption of continuing existence. Where the special presumption of revocation is applicable to the facts it must therefore be held that it is not rebutted or overthrown by the application of the general presumption embodied in subdivision 32 of said section 1963." The test is that if the will is shown to be in the actual possession of the testatrix, the presumption of revocation may not be rebutted by the presumption of continued existence. In the present case it is not necessary to rely upon the *presumption* of continued existence. The will had been "deposited by the deceased with a custodian" (*Estate of Ross, supra,* p. 647); it was in a safe deposit box, and testatrix "did not thereafter have it in her possession" (*Estate of Ross, supra,* p. 647), although both she and her husband had the right of access to the box. The evidence shows that, following her conversation with her two daughters-in-

law and son as to having a will, it was at no time physically possible for Mrs. Thompson to have availed herself of her right of access to the box. Appellant testified that his wife was not in San Francisco, where the safe deposit box was located, following those conversations, which eliminates any possibility that the testatrix herself might have removed the will from the box.

There remains for consideration the fraudulent destruction of the will; whether the evidence is sufficient to sustain the finding that it "was fraudulently destroyed by Bert Thompson after the death of said decedent". The records of the bank show that the box was opened several days after Mrs. Thompson's death by the assistant manager and another employee of the bank; no will was found. The records also indicate that the last entry to the box prior to decedent's death was by Mrs. Thompson, and this was approximately three months prior to her demise. However, the assistant manager of the bank, the only witness called in that regard, testified that he would not know whether appellant entered the vault and opened the box during the middle of November (Mrs. Thompson died November 18th) "unless I took care of him myself". The fraudulent destruction is based upon a factual inference.

Appellant admitted visiting the bank the day following his wife's death, but denied entering the safe deposit box. He was observed leaving the bank "stuffing some papers down in his right hand coat pocket". Later the same day he visited a daughter of decedent and gave her the names and addresses of secretaries of certain lodges, located outside of the state, in which Mrs. Thompson held membership, which names and addresses were kept in the box. Appellant admitted that prior to that date he had no information as to these names and addresses, but testified that he obtained such data from one of the daughters of decedent. The daughter denied that she knew or gave the information. Referring to appellant, the daughter's husband testified, "And he said he had to come over to get those addresses from the bank." A slip of paper given the daughter by appellant, on which were written the names and addresses of the secretaries, was introduced in evidence. Appellant at first admitted the writing was that of his wife; later he became evasive and said he did not know who had written the slip.

As applied to the facts of the present case, the citations submitted by appellant are not persuasive. In *Estate of Smith,* 140 Cal. App. 508, 516 [35 Pac. (2d) 335], the well recognized rule is followed "that, where the evidence shows that the instrument cannot be found, and that when last seen or known to exist, it was in the custody or possession of decedent, the conclusion of law is that the writing was destroyed by the decedent, and that he acted with the intention of effecting a revocation thereof". The facts of the case were not in dispute and there was evidence from which an inference could be drawn that decedent "had physically destroyed all wills made by her previous to" a certain date. In the present case the will was not in the actual possession of decedent and there was no evidence from which an inference might be drawn that testatrix had destroyed or even intended to destroy the will. In *Estate of Allan,* 15 Cal. App. (2d) 272 [59 Pac. (2d) 425], there was evidence from which an inference could be drawn that the will in question, in the actual physical possession of decedent, had been burned by her prior to her death. In *Estate of Le Sure,* 21 Cal. App. (2d) 73 [68 Pac. (2d) 313], two witnesses testified that testatrix had positively stated that her will had been destroyed, and the court expressly found that the will had not been lost or destroyed without the knowledge or consent of the testatrix. In *Estate of Duffill,* 14 Cal. App. (2d) 284 [58 Pac. (2d) 185], no witnesses who had actual knowledge of the contents of the purported will were produced. In that case, pages 285, 286, the court said: "It is the province of the fact finder to determine where the preponderance of evidence lies, and this court on appeal will not substitute its opinion for that of the trial court as to the weight of the evidence where there is any substantial evidence to sustain the trial court's finding." In the present case the testatrix had signed a will; after her death it could not be found. Its provisions were clearly and distinctly proved by two credible witnesses.

By the terms of the will appellant was excluded from sharing in the estate of his wife; the property settlement agreement between decedent and her husband was introduced in evidence. It was to his advantage that the will should not be found. Considering the evidence, and the opportunity of the trial judge to weigh the same, observe the witnesses and determine their credibility, this court is not in a position to

say that the inference drawn from the circumstantial evidence introduced does not sustain the finding.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.