[Civ. No. 7138.   Third Dist.   Dec. 4, 1945.]

SOUTHERN CALIFORNIA FREIGHT LINES (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Respondent.

H. J. Bischoff for Appellant.

Robert W. Kenny, Attorney General, and John L. Nourse, Deputy Attorney General, for Respondent.

ADAMS, P. J.—This action was brought by Southern California Freight Lines to recover transportation taxes assessed under the provisions of chapter 339, Statutes of 1933 as amended, and paid under protest. Trial was had by the court sitting without a jury, and resulted in findings and judgment in favor of defendant.

Plaintiff is a highway common carrier, as that term is defined in section 2¾ of the Public Utilities Act, engaged in the business of transporting property for hire over the public highways of this state, and as such transportation company is subject to a tax on its gross receipts under the provisions of the California Motor Vehicle Transportation License Tax Act [Stats. 1933, p. 928; Deering's Gen. Laws, Act 5130d]. It filed monthly reports showing its gross receipts for the period between September 1, 1937, and February 28, 1939, and paid a 3 per cent tax based thereon. Subsequently defendant Board of Equalization filed a claim for the additional taxes which are the subject of this action, the board claiming that appellant should have reported as its revenue a portion of what plaintiff claims was the revenue of the Southern California Freight Forwarders, which latter company is an express corporation within the meaning of section 2(k) of the Public Utilities Act, and, as such, is not subject to taxation under the Motor Vehicle Transportation License Tax Act, when vehicles operated by it are operated exclusively within the limits of municipalities.

The entire capital stock of both companies, which will be referred to hereinafter as the "carrier" and the "express company," respectively, is owned by Southern California Freight Lines, Ltd., a third corporation. On December 17, 1934, by a decision of the Railroad Commission, Southern

California Freight Forwarders was granted the right to conduct an express business, and in August, 1935, its capital stock was increased to $8,150, but was not increased thereafter during the period covered by the tax in controversy. During the same period the capital investment of the carrier, which had been in existence for several years prior to the incorporation of the express company, was in excess of $200,000, while the express company had no assets other than furniture, fixtures and office equipment which it had acquired from plaintiff in return for certain shares of its capital stock, and which had a value of less than $8,000.

In 1935 the carrier and the express company entered into a joint facilities agreement, which, though by no means explicit in its terms, apparently was intended to provide that each company granted to the other the use of its facilities; that the carrier should transport on its trucks and trailers all property tendered to it by the express company for transportation over the highways of the state, and that the express company should perform the services of an express company, including pickup and delivery service within the limits of the municipalities which they served; that the express company should collect the revenue and distribute 40 per cent thereof to the carrier for the transportation of goods tendered by the express company, and that the remainder of the revenue of the express company, except a small amount to be retained to cover depreciation of its property, should be applied to the expenses of the two companies; that express company should publish rates, issue through bills of lading and contract with the public to perform complete transportation service, and, in so doing, jointly with the carrier, engage the services of employees, secure facilities, and contribute its own facilities to the use of the carrier to avoid duplication.

For the period in controversy plaintiff made returns to the Board of Equalization including therein as a part of its revenue amounts received from the express company purporting to be 40 per cent of the gross revenue of the latter company. The board, being dissatisfied with these returns, made its own audit of plaintiff's books, and assessed against it additional taxes based upon its conclusion that while the express company had been active in acquiring business it had not in fact rendered pickup and delivery service but that such service had been performed by the carrier. Plaintiff paid the addi-

tional taxes under protest, and brought this suit for their recovery.

The trial court found, as a part of findings VII and VIII, that the 40 per cent provided to be received by plaintiff was adequate consideration for the services agreed to be performed by it *under the contract,* but that plaintiff, in addition to those services, had actually performed the service of store pickup and delivery which it had performed prior to the execution of the contract. In finding IX it found that the proportion of the income from the express business represented in the pickup and delivery service, and which was purported rendered by the express company, was, in fact, a return to plaintiff from its own efforts and upon its own capital investment, and was principally used in defraying the cost of plaintiff's operations, and contributed to its profits; and in finding X, that the formal relation between plaintiff and the express company was merely colorable.

On this appeal it is contended by the carrier that said findings VII to X are not supported by the evidence; that on the contrary the evidence shows that the express company did render the pickup and delivery service, that it collected its own revenue out of which it paid to the carrier the 40 per cent due it under the agreement, and that it is not true that the relation between the carrier and the express company was merely colorable.

██ It is well established that where it is contended on appeal that the evidence does not support the findings of a trial court, an appellate court may not reverse a judgment if there is to be found in the record any substantial evidence, contradicted or uncontradicted, which, together with reasonable inferences to be drawn therefrom, will support the findings upon which such judgment is based; that all conflicts must be resolved in favor of respondent, and all reasonable inferences indulged in to support the judgment; and that when two or more inferences reasonably can be deduced from the facts, a reviewing court is without power to substitute its own deductions for those of the trial court. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

██ In support of its contention that findings VII and VIII are not supported by the evidence, appellant argues that there is no evidence that it rendered pickup and delivery ser-

·vice or that it collected any of the revenue of the express company; that, on the contrary, the latter collected its own revenue, and out of same paid plaintiff the 40 per cent due it; that the carrier was disbursing agent for both companies. In this behalf it relies upon the testimony of its only witness, R. Robert Buttcane, who stated that since August, 1939, the express company has disbursed its own payroll.

But there is evidence showing that prior to August, 1939, and during the period for which the tax was assessed, the express company had no bank account, that the revenue of both companies, including that attributable to the pickup and delivery service, went into plaintiff's bank account, that the truck drivers and general employees were paid by it, that insurance on the drivers was in its name, that trucks used in such service were owned by plaintiff, and bore its name only, that bills were rendered in the names of both companies, that city and county taxes were billed to plaintiff, that accounts receivable were shown as assets on its books, and that the express company had no assets other than certain office equipment of comparatively small value.

At the trial plaintiff introduced as an exhibit an analysis of the expenses of the two companies, made by Mr. Buttcane for the purpose of the trial, in which he allocated to each company, in a more or less arbitrary manner, the various items in conformity with what he called the "functions" of each company under the agreement, though such allocations were not shown on the books.

Respondent's witness H. D. Abbott, an auditor for the Board of Equalization, also made allocations from the books of plaintiff, allocating to it the expenses attributable to the pickup and delivery service, on the theory that such service was actually performed by plaintiff and not by the express company, regardless of what may have been the so-called functions of each company under the agreement.

It is apparent that the findings of the trial court are not based upon what the functions of the respective companies were under the contract, but upon the actualities; and we are of the opinion that it was reasonable to infer from the foregoing that the pickup and delivery service, though it may have been one of the *functions* of the express company under the contract, was actually performed by plaintiff, and that the revenue derived from that service was actually the revenue of plaintiff upon which it was properly required to pay the

tax assessed by respondent. The trial court obviously drew this inference and we cannot say that it is without substantial foundation. It is therefore useless to urge upon this court that there is evidence from which contrary inferences could have been drawn.

Appellant in its brief devotes some pages to an argument under the heading "Paragraph X of the Findings to the Effect That Southern California Freight Forwarders Is Not a Bona Fide Corporation Is not Supported by the Evidence." But that was not the finding. It was that the "formal relation" between the two companies was merely colorable—that is, as we understand it, that the so-called functions of the express company under the contract were not actually performed by it, but were merely colorable. The trial court did not, as appellant contends it did, disregard the corporate entity of the express company. It merely held that the pickup and delivery service was not actually performed by it, but that plaintiff attempted to show that it was by allocating the revenue therefrom to the express company in conformity with the agreement. Cases cited by appellant holding that corporate entity may not be disregarded are therefore not in point. More nearly in point are such cases as *Buick Motor Co.* v. *City of Milwaukee,* 43 F.2d 385, where plaintiff company sought relief from taxes assessed on the income from its business transacted in Wisconsin, and relied upon a contract with General Motors Company under which plaintiff was to buy automobiles, etc., upon a basis that would result in an annual net profit to it of $2,500 (10% upon its capital stock of $10,000). The court there held that the contract could not preclude the taxing authority from assessing taxes upon a greater net profit, if plaintiff's sales actually showed such greater profit. It said, p. 390: "It is my judgment that when the business transacted is found to be plaintiff's, conceding the 'subsidiary' relation to General Motors, the tax authorities of the state were not obliged to respect the contract as an instrumentality relieving plaintiff, in whole or in part, from the effectiveness of the tax law against the income arising in or on such business. In other words, the contract cannot be interposed as a means of cutting off the income from the business, or from the plaintiff, and devolving it upon the motors company as the one solely responsible to the call of the law."

This case was affirmed in 48 F.2d 801, and in the opinion

rendered by the appellate court it was said that "if appellant, notwithstanding the contract, continued to earn the income upon business transacted within the state, the contract would not serve to defeat the right of the state to tax the income so earned." (Cert. denied, 284 U.S. 655 [52 S.Ct. 34, 76 L.Ed. 556].) Also see *Palmolive Co.* v. *Conway*, 43 F.2d 226, affirmed in 56 F.2d 83, cert. denied, 287 U.S. 601 [53 S.Ct. 8, 77 L.Ed. 524].

█ Under the decision in *Bekins Van Lines, Inc.* v. *Johnson*, 21 Cal.2d 135 [130 P.2d 421], the revenue of plaintiff from the pickup and delivery service, if such service was actually performed by appellant, was a part of its gross receipts subject to taxation. The trial court found, on what we are constrained to hold is sufficient evidence, that such service was performed by appellant. As in *Boessow* v. *Johnson*, 10 Cal.App.2d 578 [52 P.2d 505], the contract relied upon was not, in fact, carried out, insofar as the pickup and delivery service was concerned, but plaintiff continued to perform it as it had done prior to the execution of the joint facilities agreement; and while in the Boessow case the court found that the agreement relied upon by appellant had been entered into as a mere subterfuge to avoid the payment of taxes without changing the relationship of the parties, we do not deem it necessary to find in the case before us, nor did the trial court find, that the agreement was entered into for that purpose. It is sufficient that, insofar as the pickup and delivery service was concerned, it was not, in fact, carried out, and the relations of the parties in that behalf were merely colorable— existed in form only. (Also see *Service Tank Lines* v. *Johnson*, 61 Cal.App.2d 67 [141 P.2d 965].)

It is not contended here that the carrier and the express company could not legally have so arranged their business as to lessen plaintiff's tax liability—the question is purely one of fact as to whether the contract which they made was so carried out as to shift the tax burden. On that question the finding of the court has sufficient substantial support in the evidence, and the judgment is therefore affirmed.

Peek, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 31, 1946.