[L. A. No. 20031.   In Bank.   Mar. 30, 1948.]

Estate of KATHERINE ALLEN SMITH, Deceased. PETER GROSS et al., Appellants, v. ERNEST E. JONES et al., Respondents.

Louis Thomsen for Appellants.

Schweitzer & Schweitzer for Respondents.

SHENK, J.—This is an appeal by contestants from a judgment admitting a will to probate.

The facts are not in dispute. The questions presented concern the legal effect of an alleged revocation of the will and the correctness of the court's ruling admitting evidence over objection of the testatrix' declarations bearing upon her revocatory intent.

On July 22, 1942, the decedent, then about 58 years of age and describing herself as a widow without descendants, executed a duly attested typewritten document consisting of two pages which she declared to be her last will and testament. By this instrument she purported to leave her entire estate to Pomona College to establish the Katherine Allen Smith Scholarship Fund, and to appoint Ernest E. Jones, treasurer of the college, as executor. She deposited the executed will with her attorney and retained in her own possession an unexecuted carbon copy. She died on January 5, 1946, without recalling the executed document from her attorney's posses-

sion and without making another will. After her death there was found among her effects the unexecuted carbon copy of her will but with writing across the face of each page. Obliquely across the first page, extending through all of the typewritten portion, was the following entirely in the decedent's handwriting: "I Katherine Allen Smith do hereby revoke this will it is now nul and void (nul & void) Katherine Allen Smith July 10th 1945." Across the dispositive provisions and testimonium clause of the second page was the following entirely in the decedent's handwriting: "I Katherine Allen Smith do hereby revoke this will it hereby becomes nul and void Katherine Allen Smith July 10th 1945." These two writings will be hereinafter referred to as one writing or instrument. The decedent's estate aggregates in value about $13,000 and appears to have been her separate property by inheritance from her mother. Peter Gross, an uncle, 77 years of age, of North Hollywood, California (formerly of St. Cloud, Minnesota), and Mary Gross Schmitt, an aunt, 75 years of age, of St. Cloud, Minnesota, are the surviving next of kin and heirs at law by intestate succession.

On January 14, 1946, Virgil L. Catching, son of a living sister of the decedent's former husband Smith, and a resident of Los Angeles County, filed a petition for letters of administration as a creditor of the estate. On January 30, 1946, the public administrator of the county filed a petition for letters. Each petition indicated that the heirs of the decedent were unknown. On January 31, 1946, Peter Gross filed a petition for letters of administration alleging the kinship of himself and his sister. In each of the foregoing petitions it was stated that due search and inquiry disclosed that the decedent had not left a will.

On March 7, 1946, Ernest E. Jones, named as executor in the will of July 22, 1942, petitioned for the probate of that instrument and for the issuance to him of letters testamentary. This petition also set forth the revocatory instrument written, dated and signed by the decedent on July 10, 1945, but sought its rejection on the ground that it was not executed in accordance with statutory requirements and that at the time of its execution the decedent did not have testamentary capacity. Peter Gross and Mary Schmitt filed their objections and contest based on the asserted validity of the revocation of July 10, 1945.

A hearing was had on the contest and the answer thereto.

The court denied probate to the revocatory instrument, admitted to probate the will of July 22, 1942, granted the proponent's petition for letters testamentary, and denied the petition of Peter Gross for letters of administration. The contestants appealed from those portions of the judgment which embodied the foregoing orders.

The record does not show that the issue of testamentary incapacity of the decedent in July, 1945, was pressed and the court made no finding thereon. The court found and concluded that the decedent did not intend by the writing of July 10, 1945, to revoke her will. That finding was based on evidence introduced over objection of certain circumstances and declarations of the decedent. The evidence which was thus deemed to bear upon the revocatory intent and in effect to cancel the writing of July 10, 1945, consisted of the following:

In the latter part of June, 1945, Virgil L. Catching, in a conversation with the decedent about his uncle (decedent's former husband), asked if she intended to make reimbursement for moneys expended by her "in-laws" for taxes and other items for the home. The decedent stated her intent substantially as declared in her executed will. The nephew expressed a doubt that she had sufficient to do "much good along that line"; that it might be "kind of foolish," and that since there were so many of her "in-laws" who had helped her out from time to time she should make some provision for them. Another conversation was had between them when the decedent was in the hospital and six days prior to her death, wherein she stated that her attorney had all the papers pertaining to her estate with instructions as to what to do, that she wished to be buried "in the same order or building" as her parents, and that she was leaving her home to Virgil and his mother. There was testimony that on several occasions the decedent said that she had no living relatives. It appeared that the last times she heard from Peter Gross and Mary Schmitt were 40 and 25 years ago respectively. Subsequent to the revocatory writing the decedent stated to Virgil's mother that her will and other papers were in the custody of her attorney, and that she would like Virgil and her (Virgil's mother) to have her home. In December, 1945, the decedent told the mother that she had made a will giving all her property to Pomona College to endow a scholarship. About August, 1945, in a telephone conversation with her attorney the decedent was reminded that her papers were in his possession to which she replied, "Yes, I know that." It also

appears that for about a year prior to her death the decedent had not gone to the office of her attorney but about six months prior to her death had reported to him in a telephone conversation that she was suffering from some physical ailment.

A will may be revoked by an express written declaration of that intent executed with the same formalities required for the execution of a will. (Prob. Code, § 74 (1).) The contestants urge that the formalities were here complied with, that is, that the revocation of July 10, 1945, was entirely written, dated and signed by the hand of the testatrix and that it was entitled to be admitted to probate as a valid holographic instrument. (Prob. Code, § 53.)

It is conceded, as the court found, that the writing of July 10, 1945. including the date and signature, was by the hand of the decedent. It is also conceded that if she had specifically referred in that instrument to the will of July 22, 1942, as the will intended to be revoked, no question could arise as to the effectiveness of the writing as a revocation. But the proponents of the will urge that without the specific reference the holographic writing is ineffective as a revocation.

█ The mere writing of the revocation clause across the face of the typewritten copy of the will of July 22, 1942, did not destroy its authenticity as a valid holographic instrument. The typewritten portion of the paper had nothing to do with the holographic writing as such. The holographic instrument was self-contained and the typewriting on the sheets is therefore deemed not a part of it. (Prob. Code, § 53, *Estate of Oldham,* 203 Cal. 618 [265 P. 183] ; *Estate of De Caccia,* 205 Cal. 719 [273 P. 552, 61 A.L.R. 393] ; *Estate of Atkinson,* 110 Cal.App. 499, 502 [294 P. 425] ; cf. *Estate of Thorn,* 183 Cal. 512 [192 P. 19] ; *Estate of Bernard,* 197 Cal. 36 [239 P. 404] ; *Estate of Bower,* 11 Cal.2d 180 [78 P.2d 1012].)

The holographic writing was made across the copy of the typewritten will for the sole purpose of identifying the will intended to be revoked. That purpose is made certain by the use of the words ''this will'' in expressing the revocatory intent. █ It has long been settled in this state that either a holographic or an attested testamentary instrument may refer to and incorporate another testamentary instrument executed with different statutory formalities or an informal or unattested document, so long as the reference is unmistakable or with the aid of extrinsic proof can be made so. (*Estate of Skerrett,* 67 Cal. 585 [8 P. 181] ; *In re Soher,* 78 Cal. 477

[21 P. 8] ; *Estate of Young,* 123 Cal. 337 [55 P. 1011], where the rule was recognized but the reference held inexplicit; *Estate of Plumel,* 151 Cal. 77, 79-80 [90 P. 192, 121 Am.St. Rep. 100], citing cases; *Simon* v. *Grayson,* 15 Cal.2d 531 [102 P.2d 1081] ; *Estate of Wunderle,* 30 Cal.2d 274, 281 [181 P.2d 874] ; *Estate of Sullivan,* 94 Cal.App. 674, 678 [271 P. 753] ; *Estate of Atkinson, supra,* 110 Cal.App. 499, 502; *Estate of Miller,* 128 Cal.App. 176, 181 [17 P.2d 181], citing cases; *Estate of Martin,* 31 Cal.App.2d 501, 505, 507 [88 P.2d 234].) ██ The writing of the revocation across the typewritten face of the copy of the will of July 22, 1945, with the use of the words."this will," was but a substitute for a more specific reference; and since that language with the aid of the typewritten copy upon which it appears identified the will intended to be revoked, it served the purpose of a specific reference. All that is here required is that the revocatory writing should so refer to the will that its identity will be unmistakable. That the language of the writing of July 10, 1945, across the face of the copy, does unmistakably identify it can admit of no doubt. It is therefore a valid effective revocation of the will of July 22, 1942.

██ Once it is determined that the decedent revoked her prior will by the writing of July 10, 1945, there is no room for speculation. Therefore the evidence received of extraneous occurrences and declarations claimed to bear upon the intent to revoke cannot overcome the valid express revocation. It is said in 4 Page on Wills, page 665, with citation of cases, that declarations of the testator are not admissible to show that an express revocation clause was not intended to revoke a prior will. ██ The statement relied on from *Estate of Thompson,* 44 Cal.App.2d 774, 776 [112 P.2d 937], that declarations of a testatrix are admissible on the issue of revocation, standing alone, is too broad. That rule is applied, as it was in that case, where it is sought to establish a lost or destroyed will; or in the case of a will executed in duplicate one executed copy of which was destroyed (*Estate of Janes,* 18 Cal.2d 512 [116 P.2d 438] ; *Managle* v. *Parker,* 75 N.H. 139 [71 A. 637, Ann. Cas. 1912A 269, 24 L.R.A. N.S. 180]) ; or to explain cancellation marks on the original will not amounting to an express revocation (*Estate of Olmsted,* 122 Cal. 224 [54 P. 745]. See also cases collected in note, 24 L.R.A. N.S. p. 180, 79 A.L.R. 1493, 1496). The basis of the rule in such cases is that the act of the testator is ambiguous and is explainable by his declarations. It is the rule which applies

when the language of a purported testamentary writing is ambiguous and extraneous declarations are necessary to determine the testamentary intent. (See *Estate of Pagel,* 52 Cal. App.2d 38 [125 P.2d 853].) The rule here applicable is not the rule which governs in the establishment of testamentary intent by ambiguous writing or conduct. ■ Nor is there room for the application of the rule that constructions which lead to total or partial intestacy are not favored. That rule also applies only where there exists an ambiguity or uncertainty in the language of the testator. (*Estate of Wierzbicky,* 69 Cal.App.2d 690, 693 [159 P.2d 699].) Here there can be no inference other than that which is in accord with the unambiguous express revocation.

On this record all that was properly before the court was a duly executed express revocation of a prior will, which presented a case of intestacy and called for the issuance of letters of administration to the party entitled thereto. (*Luckey* v. *Superior Court,* 209 Cal. 360, 365 [287 P. 450].)

Those portions of the judgment admitting to probate the instrument of July 22, 1942, granting letters testamentary thereon, denying admission to probate of the holographic revocation of July 10, 1945, and denying the petition of Peter Gross for letters of administration are reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. The majority opinion is essentially based on the statement that "The facts are not in dispute." But according to the record as I view it the facts *are* in dispute.

The crucial question in the case is whether the decedent executed the alleged revocatory instrument with intent to effect revocation of the will of July 22, 1942. Without such intent the later writing would be wholly ineffective. Since the decedent alone could have given direct evidence of her intent, and since her lips are stilled, resolution of the question must depend upon indirect or circumstantial evidence or upon rules of law as to the burden of proof. Since the due execution of the will was established the burden was upon contestants to prove the *animus revocandi* of the testatrix. The evidence upon this subject is in substantial conflict, at least in relation to the inferences to be drawn from the circumstances shown. An inference, of course, is evidence. (Code Civ. Proc., § 1957.)

The evidence on the issue in question is conflicting in the following respects: An intent to revoke the will of July 22, 1942, is inferable from the very writing by decedent of the language used in the claimed revocatory document; such evidence, however, obviously is not conclusive of the intent with which it was penned. The testatrix may well have believed that the words written on the carbon copy of her will would have no effect whatsoever unless she published such later writing as her formal act. If she had ever executed a deed or contract it is not unlikely that she had been told that mere signing of the document would have no legal effect, that it would have to be delivered as well as signed to be effective; she may have thought the same rule would apply to an instrument revocatory of a formally executed will. She may have *contemplated* revocation but decided against it; in such contemplation she may have written the endorsement on the carbon copy of her will believing that those words would have no effect unless she secured the formally executed will from her attorney and made the endorsement on that document. This last hypothesis is one which the trial judge, in the light of all the evidence, may well have deemed most likely to be correct. Supporting such view are the following facts: The will of July 22, 1942, was formally executed and left with decedent's long-time attorney; the claimed revocatory instrument was never delivered or even exhibited to any person during decedent's lifetime; decedent's attorney had drawn the will for her; he was told nothing of an intent to revoke it; on the contrary after the date of the alleged revocatory writing he talked with decedent and according to the record stated " 'You know I have your will and papers here' and she said 'Yes, I know that' "; decedent also, subsequent to the asserted revocation date, made statements to the witness Julia O. Spencer which are definitely and substantially inconsistent with the claimed *animus revocandi*; likewise, the testimony of Virgil L. Catching, as to conversations with decedent both shortly before and after the claimed revocation date, shows a state of mind of the decedent inconsistent with revocation; the original will was left outstanding in the hands of decedent's attorney; the circumstances of decedent's estate and her relationship to the persons who seek to succeed thereto by overthrowing her will are shown to be such that the dispositive provisions of the will appear to be natural and reasonable; lastly, no motive for revocation is shown and no substitute will or altered testamentary plan is suggested to have been determined upon by the testatrix.

It is not contended that the revocatory instrument, if it ever was executed with intent to revoke the will, could itself be revoked and the will reinstated by any oral declarations of the testatrix; the proponents make no such suggestion. But it is most earnestly contended, and I think with full justification, that the evidence supports the conclusion that the testatrix merely contemplated and decided against revocation; that the asserted revocatory instrument never was executed with intent to make it effective; and that the original will never has been revoked. The trial court, having heard the evidence, specifically found "That testatrix did not intend by writing said words of July 10, 1945 to revoke or alter said Will of July 22, 1942, in whole or in part," and "That the Will of July 22, 1942, is the Last Will and Testament of Katherine Allen Smith, deceased, was considered as such by decedent at all times from the date of its execution until the date of her death, and at no time was revoked by decedent, in whole or in part."

The evidence upon which the trial court made its findings of fact, including the evidence as to the declarations of the testatrix, was competent to that end. (*Estate of Thompson* (1941), 44 Cal.App.2d 774, 776 [112 P.2d 937].) Under such circumstances it is our duty to affirm the judgment. (*Estate of Bristol* (1943), 23 Cal.2d 221, 223 [143 P.2d 689]; *Cate* v. *Certainteed Prod. Co.* (1943), 23 Cal.2d 444, 448 [144 P.2d 335]; *Estate of Teel* (1944), 25 Cal.2d 520, 526 [154 P.2d 384]; *Fackrell* v. *City of San Diego* (1945), 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625]; *Viner* v. *Untrecht* (1945), 26 Cal.2d 261, 267 [158 P.2d 3]; *Pewitt* v. *Riley* (1945), 27 Cal.2d 310, 313 [163 P.2d 873]; *De Young* v. *De Young* (1946) 27 Cal.2d 521, 526 [165 P.2d 457]; *Millsap* v. *National Funding Co.* (1944), 66 Cal.App.2d 658, 665 [152 P.2d 634]; *Southern Calif. Freight Lines* v. *State Bd. of Equalization* (1945), 72 Cal.App.2d 26, 29 [163 P.2d 776]; *Berry* v. *Chaplin* (1946), 74 Cal.App.2d 652, 663 [169 P.2d 442]; *Medina* v. *Van Camp Sea Food Co.* (1946), 75 Cal.App.2d 551, 556 [171 P.2d 445]; *Seidenberg* v. *George* (1946), 76 Cal.App.2d 306, 308 [172 P.2d 891]; see also cases epitomized in dissenting opinion in *Isenberg* v. *California Emp. Stab. Com.* (1947), 30 Cal.2d 34, 46-48 [180 P.2d 11].)

The majority opinion leaps completely over the proposition that the finding of the trial court on conflicting evidence is binding on us, by its assertion, previously mentioned, that "The facts are not in dispute," and its assumption from then

on that the testatrix, by her equivocal act, *intended* to revoke her will. As also previously shown, the crucial fact question in the case is whether she intended by her act to revoke the will. Yet the majority, without discussing the sufficiency of the evidence, asserts that the facts are not in dispute, assumes the intent to revoke, and declares, ''Once it is determined that the decedent revoked her prior will by the writing of July 10, 1945, there is no room for speculation. Therefore the evidence received of extraneous occurrences and declarations claimed to bear upon the intent to revoke cannot overcome the valid express revocation . . . Here there can be no inference other than that which is in accord with the unambiguous express revocation.''

It is apparent that this court, by the language above quoted, has made the claimed revocatory writing *conclusive and exclusive* evidence of the intent with which it was written, although there is no evidence whatsoever that the writer ever published the document as her act, and despite the fact that substantially all the evidence on the subject tends to show that she never intended to revoke her will. The rule made by the majority seemingly would apply equally even though it were indisputably proven that at the time decedent penned the asserted revocatory words on the copy she declared that she was merely contemplating possible future revocation of her original, executed will and that she was writing the words across the face of a carbon copy of her will merely to serve as a memorandum in the event that in the future she should decide to revoke her will, in which case she would procure the original executed will from her attorney and write the same language thereon. Under the rule laid down by the majority, the result, it seems, would also be the same, even though the decedent made the above suggested declarations of intent in writing, and notwithstanding it should also appear that her attorney advised her that the making of the memorandum on the carbon copy would be meaningless unless she later determined to, and did, endorse the revocatory language on the original will. In fact, if the majority opinion is to be followed, upon a new trial an offer to prove all of the above suggested facts would be rejected.

In my view, questions of fact on conflicting evidence should be left to resolution by trial courts. The judgment here should be affirmed.