[Civ. No. 12540.   First Dist., Div. One.   Oct. 20, 1943.]

SERVICE TANK LINES (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

Paul J. Fritz for Appellant.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Respondent.

WARD, J.—This is an action to recover certain taxes assessed under the provisions of an act imposing a license fee or tax for the transportation of persons or property for hire or compensation upon the highways, etc. in the State of California.  (Stats. 1933, ch. 339, p. 928, as amended by Stats.

1935, ch. 780, p. 2176, as amended by Stats. 1937, ch. 679, p. 1919, as amended by Stats. 1939, ch. 944, p. 2653; Deering's Gen. Laws, 1939 Supp., Act 5 130d.) The act provides for a tax of three per cent upon gross receipts from the operation of trucking equipment. Statutes 1939, page 2654, section 1(a) provides: "The term 'operator' shall include all persons engaging in the transportation of persons or property for hire or compensation by or upon motor vehicles upon any public highway in this State, either directly or indirectly, *and shall include any person who shall furnish any motor vehicle for the transportation of persons or property under a lease or rental agreement when pursuant to the terms thereof such person operates such motor vehicle, or exercises any control of or assumes any responsibility for, or engages either in whole or in part, in the transportation of persons or property. . . .* " (Portion in italics indicates the change in the 1939 statute.)

The Caminol Company, Ltd., a corporation engaged in the business of refining and marketing petroleum products, for a certain period hired plaintiff's trucks to be used in their transportation; payment depending upon the number of "hauls" made. In April of 1939 the parties entered into a written agreement providing that for a period of twelve months, for a stipulated sum per month, plaintiff would supply, with its equipment, a competent driver or operator, both equipment and driver or operator to be at all times under the full control and direction of Caminol. Plaintiff further agreed to pay the salary of such operator; to replace him if he should be or become unsatisfactory to Caminol, and to carry and pay for workmen's compensation insurance; to carry public liability and property damage insurance in specified amounts, protecting the parties to the agreement, and to hold Caminol harmless from all liability in connection with the operation of the equipment; also to supply adequate licenses, gas, oil, etc. in connection therewith. Either party could cancel the agreement upon fifteen days' notice to the other. The evidence indicates that the trucks were operated in conformity with the agreement.

Plaintiff contends that the exclusive power and control over the trucks was passed to Caminol under the above agreement, which constitutes a hiring or leasing; and that there is a fundamental difference in the business relations of the parties as they existed before and after its execution.

The trial court prepared the following written opin-

ion, founded upon the evidence introduced, which we adopt as part of this opinion: ''I think that the contracts or agreements between the parties hereto fail to disclose a lease or leases and appear to have had no other result than to effect a relatively unimportant change in the manner in which plaintiff transacted its business. A close examination of the 'leases' and a comparison of what was done under them with what had been done before when the plaintiff had admittedly been employed to haul and transport the oil products of the so called lessees, will show that the leases made no substantial change in the way in which the parties conducted their business with each other.

''Both before and after the leases the equipment was devoted to what appears to have been the same service; it was used in each instance to transport the oil products of the lessee. Under the leases a named sum per month was paid for the use of the various pieces of equipment in transporting the lessee's products.

''Prior to the leases plaintiff charged for such transportation in proportion to the hauling done and the time consumed in doing the work. But the leases appear to have made no substantial difference in this respect as the so called rent paid under the leases was practically the same as the charges made for like service before the leases were made.

''Before the leases were made the plaintiff paid his employees, kept his equipment in repair, services [sic] his trucks and supplied them with gasoline; protected his employees with Workmen's Compensation Insurance, and carried Public Liability and Property Damage insurance on his operations. All of this he continued to do and obligated himself to do under the lease agreements.

''The question is raised as to who controlled the employees while they were engaged in hauling for the lessee. The plaintiff employed them in the first instance. It is true that under the lease the plaintiff agreed to 'replace' any of such employees at the request of the lessee in case he was or became 'unsatisfactory' to such lessee. This does not mean that the employees were practically the employees of the lessee, or that they were under its control. It could not 'request' the removal of an employee at its mere whim. It could do so only when the employee proved 'unsatisfactory' which must be held to be nothing less than that in some appreciable way the man failed to properly do his work. The right to

have capable operatives under the leases was no more than the duty of the plaintiff to the lessee prior to the lease; it was at that time an implied obligation of the contract of hauling that the work be properly done, in which case it could not be denied that it was 'satisfactorily' done. In other words before the leases as well as under them the work of the employees had to be satisfactory and competent.

"Further, under the leases after an employee had been 'replaced' he was succeeded by another employed by the plaintiff. It could hardly be claimed in such circumstances that the lessee had any more control and direction over the drivers of the trucks than it had previously when they reported for the performance of any hauling for which they had been summoned by the lessee, or sent by the plaintiff. Even in the latter case the employees would have to be told by the lessee with what product to load his truck and where and upon what conditions the load was to be delivered.

"No larger or different use or control over the equipment was exercised or given to the lessee than it enjoyed before the leases were made. Under each of the lease agreements it is provided that the 'motor vehicle equipment and said driver and operator shall at all times remain under the full control and direction of second party (lessee) and first party (plaintiff) shall have no voice as to the use or uses to which said motor vehicle equipment is put, or as to when or where the same shall be used.' This reads like a complete delivery to the lessee and the surrender of all control to it. But the evidence shows that after the leases there was a very slight difference in the place where the equipment was stored or placed when not in use; the terminal of plaintiff was 'across the street' from the refinery of the lessee, and because of plaintiff's obligation to supply gas and oil for the trucks the equipment was often at the terminal of the plaintiff. So far as the use of the equipment was concerned it appears that it was described in the lease as suitable for transportation of property 'particularly gasoline, cashinghead [sic], diesel fuel and crude oil.' No wider or different use of the equipment appears to have been made. The equipment was used exactly as it had been used before the attempted lease, over the same routes, driven by duel [sic] of the same owner and operated by the same man, or another chosen by the plaintiff. The only apparent difference between the parties following the leases is that by it the lessee had the exclusive use of the equipment for the carriage of his gasoline and oil products,

whereas previously it was required theoretically to depend upon whether or not equipment was available at the time it sought to secure it.

"This difference however appears to have been merely nominal as the same trucks had been used in the service of the lessee before the leases and had given it the same service which it obtained from them under the new arrangement. I see nothing under the leases which changes in any substantial way the method by which the parties dealt with each other before they were made.

"As a consequence plaintiff must be held to have remained the operator of the equipment, and its income derived from the hauling done for the lessee must be held to be subject to the tax imposed upon it. The terms 'lease' and 'lessee' as used herein were used as simplification of description and not intended as holding them to be such."

In considering the act under the 1933 statutes, the court in *In re Bush*, 6 Cal.2d 43, 49 [56 P.2d 511], dealing with the definition of the word 'operator,' said: "But the very phraseology employed likewise compels the conclusion that the act was not intended to be limited to such carrier service but was purposely phrased to include *in addition* other transportation upon the public highways for hire or compensation, directly or indirectly." In *Bekins Van Lines, Inc.* v. *Johnson*, 21 Cal.2d 135 [130 P.2d 421], considering the word "operation," as used in the law as it existed in 1935, the court said (p. 141): "If the Legislature intended to exclude from 'operation' as defined every incidental service and activity customary and essential in the matter of transporting goods for compensation and hire, it could easily have said so. By failure to use any such limiting words the Legislature indicated its intention of not so limiting or circumscribing the meaning or scope of the act." In *Consolidated Rock etc. Co.* v. *State of Cal.*, 57 Cal.App.2d 959 [135 P.2d 699], considering the situation of a merchant transporting his own goods and adding transportation charges to the selling price, in which the 1937 amendments were involved, the court quoted from *In re Bush, supra,* and further said (p. 962): "The use of the qualifying adverb 'indirectly' gives the definition a very sweeping character, and were the question a completely novel one we would have no hesitation in holding that in such transaction the merchant was transporting property for compensation, at least indirectly. True he

is not making a transportation charge as such (*i. e.* directly), but the result is no different than if he were, since the charge is added to the selling price of the goods and is thereby collected as effectively, although indirectly.'' (See *Boessow* v. *Johnson*, 10 Cal.App.2d 578 [52 P.2d 505].)

*Entremont* v. *Whitsell*, 13 Cal.2d 290 [89 P.2d 392] is a case involving an agreement similar and in many respects identical to the one herein. The attempt of appellant to differentiate that case is not convincing. Entremont, a private carrier, and the State Department of Public Works instituted a proceeding in certiorari against the Railroad Commission to secure the annulment of an order directing Entremont to collect from the department certain undercharges, etc., contending that the contract between Entremont and the department did not constitute an agreement for the transportation of property for compensation. At pages 295-296 the court said: ''Although the solution of the problem is not entirely free from doubt, it is our opinion that this contract did not constitute the renting or leasing of equipment to the department but was a contract calling for the transportation of property by motor vehicle by Entremont. This conclusion follows from the fact that under the contract the possession and control of the trucks and the operators thereof did not pass to the department—the operators did not become the employees of the department—but such possession and control remained in Entremont. The chief characteristic of a renting or a leasing is the giving up of possession to the hirer, so that the hirer and not the owner uses and controls the rented property. (Civ. Code, secs. 1925, 1955.) The record is clear that the only supervision exercised by the department over the operators of the trucks was to direct them where to load and unload the material hauled, when to go on or leave the job, and to inform the operators whether the load should be dumped or spread. The department had no power to discharge the drivers—that power, and the power of selection, rested in Entremont. That is a factor of some importance in ascertaining whether Entremont or the department controlled the operators. (*Lowell* v. *Harris*, 24 Cal.App.2d 70 [74 P.2d 551].) Moreover, the provisions of the contract indicate that it was not the intention of the parties that the department should exercise exclusive control over the operators. The contract required Entremont to keep the trucks in repair; to pay all expenses incidental thereto; to supply all oil, gas and other materials necessary for their operation; to carry com-

pensation insurance on the drivers, and expressly provided the operators were the employees of Entremont. Further, under the contract, Entremont assumed all responsibility for damage or injury to other persons or property by reason of the operation of the trucks. This provision strongly implies that exclusive control was not conferred on the department." Ultimately, after considering leading cases submitted by each side, it was held that the transaction was not in fact a hiring or leasing of equipment. (See *Reavley* v. *State*, 124 Tex.Cr. 528 [63 S.W.2d 709].)

Other cases cited by appellant herein could easily be distinguished, but it does not seem necessary in view of the plain language of the respective statutes.

If, as held, plaintiff is liable under the 1937 statutes, it may be stated without further comment that the amendment of 1939, to include persons transporting property under a lease or rental agreement and exercising any control or assuming any responsibility in whole or in part, amply covers the facts at issue.

The judgment is affirmed.

Peters, P. J., and Dooling, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1943.